**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| KEVIN R. BURNS, FLORENCE J. BURNS, COLLEEN BIGELOW, DONNA BRAGA, LEONARD BOUCHARD, ALICE CAMBRA, SUSAN M. FERREIRA, RAYMOND GAGNON, CORRINE GAGNON, ANTONIO M. GUILHERME, WILLIAM HILL, SR., JOAN HILL, MICHAEL LEBEAU, CARRIE LEBEAU, CAROL A. MATHEWS, KAREN OLIVEIRA, RICHARD RAPOZA, LAUREN RAPOZA, GRANT R. SCHOFIELD, ELIZABETH TOKARZ-MACIEL, and MARISSA MACIEL, ppa. ELIZABETH TOKARZ-MACIEL, Mother and Next Friend of Marissa Maciel, a Minor, THOMAS PATERSON, THERESA PICARD, MELANIE CREADOR, ROBERT CREADOR, LUIS RESENDES, LOUISE RESENDES, LUIS RESENDES, Jr., LINDA RESENDES, DANIEL SCHREFFLER, DAVID A. TAVARES, | C.A. No. 05-274-T<br><br>(Related Case No. 05-221T) |
| *Plaintiffs,* | |
| v. | |
| NEW ENGLAND GAS COMPANY, formerly Known as FALL RIVER GAS COMPANY, | |
| *Defendant.* | |

**DEFENDANT NEW ENGLAND GAS COMPANY'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendant New England Gas Company ("NEGasCo"), an unincorporated division of Southern Union Company, hereby moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs' Amended Complaint. As set forth in the accompanying Memorandum of Law, the Amended Complaint fails entirely to state a claim upon which relief can be granted. Therefore,

this Court should grant NEGasCo's Motion to Dismiss.

Respectfully Submitted,

**ADLER POLLOCK & SHEEHAN P.C.**

By: ______________________________

John A. Tarantino (#2586)
Patricia K. Rocha (#2793)
David A. Wollin (#4950)
Kristen W. Sherman (#5595)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
Eric D. Herschmann
1633 Broadway
New York, New York 10019
(212) 506-1700

- and -

BISHOP, LONDON, BROPHY, & DODDS
Christina Dodds
The Littlefield Building
106 E. 6th Street, Suite 700
Austin, Texas 78701
(512) 479-5900

*Attorneys for Defendant*
*New England Gas Company,*
*an unincorporated division of*
*Southern Union Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of August, 2005, a copy of the foregoing was hand-delivered to the following:

Brian R. Cunha, Esq.
Brian Cunha & Associates, P.C.
904 Broadway
East Providence, RI 02914

April M Fontaine

342483_1.DOC

2005 AUG 17 P 4: 03
FILED

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| KEVIN R. BURNS, FLORENCE J. BURNS, COLLEEN BIGELOW, DONNA BRAGA, LEONARD BOUCHARD, ALICE CAMBRA, SUSAN M. FERREIRA, RAYMOND GAGNON, CORRINE GAGNON, ANTONIO M. GUILHERME, WILLIAM HILL, SR., JOAN HILL, MICHAEL LEBEAU, CARRIE LEBEAU, CAROL A. MATHEWS, KAREN OLIVEIRA, RICHARD RAPOZA, LAUREN RAPOZA, GRANT R. SCHOFIELD, ELIZABETH TOKARZ-MACIEL, and MARISSA MACIEL, ppa. ELIZABETH TOKARZ-MACIEL, Mother and Next Friend of Marissa Maciel, a Minor, THOMAS PATERSON, THERESA PICARD, MELANIE CREADOR, ROBERT CREADOR, LUIS RESENDES, LOUISE RESENDES, LUIS RESENDES, Jr., LINDA RESENDES, DANIEL SCHREFFLER, and DAVID A. TAVARES, | C.A. No. 05-274-T<br><br>(Related Case No. 05-221T) |
| *Plaintiffs,* | |
| v. | |
| NEW ENGLAND GAS COMPANY, formerly Known as FALL RIVER GAS COMPANY, | |
| *Defendant.* | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT NEW ENGLAND GAS COMPANY'S MOTION**
**TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendant New England Gas Company (hereafter "NEGasCo"), an unincorporated division of Southern Union Company, respectfully submits this memorandum of law in support of its motion, pursuant to Rule 12 of the Federal Rules of Civil Procedure, to dismiss Plaintiffs' Amended Complaint (the "Amended Complaint").

**PRELIMINARY STATEMENT**

By this action, Plaintiffs seek to recover money damages and declaratory and injunctive relief as a result of alleged contamination of the soil on property that they either currently own or reside upon or once owned or resided upon within the Town of Tiverton, Rhode Island. Plaintiffs allege that their properties are contaminated by waste allegedly generated by one or more manufactured gas plant ("MGP") facilities owned by Fall River Gas Company ("FRGC") prior to the acquisition of FRGC and its subsequent consolidation into the NEGasCo.[1] Plaintiffs allege that FRGC failed to properly dispose of the MGP waste it allegedly generated, and that NEGasCo, as FRGC's successor, is responsible for the alleged contamination of Plaintiffs' properties and for any ensuing damages. Specifically, Plaintiffs' Amended Complaint asserts the following causes of action against NEGasCo: (1) negligence; (2) strict liability; (3) private nuisance; (4) trespass; and (5) public nuisance. (Compl. ¶¶ 6-61). Plaintiffs also seek punitive damages.

Plaintiffs' claims must be dismissed as each fail to state a claim upon which relief can be granted. The negligence cause of action fails because neither NEGasCo, nor FRGC, owed a duty to Plaintiffs upon which to base a claim of negligence. Plaintiffs' claim premised upon strict liability fails because the state of Rhode Island has not recognized the application of strict liability to the disposal of potentially hazardous materials, even assuming that the actor was aware of the allegedly hazardous nature of the waste at the time of its disposal.

Plaintiffs' claims for private and public nuisance fail because essential elements of the claims are lacking. Plaintiffs' private nuisance claim is fatally defective because it is not based

---

1 In 2000, Southern Union Company acquired several gas distribution companies, including Providence Gas, Fall River Gas Works, and Valley Gas Company, and combined them to create the New England Gas Company, an unincorporated division of Southern Union.

on FRGC's use of its own property as is required under Rhode Island law, and it is undisputed that Plaintiffs' properties are not adjacent to, or "neighboring," any present or former FRGC facility. FRGC's status as a former generator of waste at a location remote from Plaintiffs' properties cannot serve as the basis for a private nuisance claim. Similarly, the claim for public nuisance fails because Plaintiffs do not allege that they have suffered a harm in the exercise of a right common to the general public, but rather in the exercise of their private property rights.

Further, Plaintiffs' trespass claim fails because they do not, and cannot, allege that FRGC's purported entry upon and use of their land -- before being purchased or occupied by Plaintiffs -- was unauthorized. In addition, the trespass claim fails as a matter of law because there is no cause of action for a trespass by a subsequent purchaser of land against a party that is alleged to have previously impacted such land.

Finally, Plaintiffs fail to provide any facts to support their bald assertion that they are entitled to punitive damages. Thus, Plaintiffs' demand for punitive damages must be dismissed.

## FACTUAL ALLEGATIONS[2]

Plaintiffs, who include current and former residents or owners of property in Tiverton, Rhode Island, claim injury as a result of contamination of their soil allegedly caused by waste products of the manufactured gas process.[3] (Compl. ¶¶ 9-10). Plaintiffs allege that FRGC was involved in the manufacture of natural gas and that various byproducts of the manufacturing process -- including cyanide, arsenic, lead, mercury, and naphthalene -- were deposited into the Plaintiffs' soil "without using proper storage containers," "proper education" and "without warning of the byproducts' propensity to contaminate the soil." (Compl. ¶¶ 8-11).

2 Well-pleaded facts are assumed true solely for purposes of this motion.

3 Coal gasification, was utilized by public utilities to manufacture gas until the process was replaced, during the 1950's, with the use of natural gas.

Based upon applicable Rhode Island law as applied to these scant facts, taken in the light most favorable to Plaintiffs, all of Plaintiffs' claims must be dismissed for failure to state a claim upon which relief can be granted.

**ARGUMENT**

A motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted where, as here, the allegations of the complaint demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Although in considering this motion, the Court must assume as true the factual allegations in the Complaint, the Court should only credit Plaintiffs' well-pleaded allegations of fact, not unsubstantiated assertions and legal conclusions. See, e.g., Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990); Arroyo-Santiago v. Garcia-Vicario, 1999 U.S. App. LEXIS 17909, *12 (1st Cir. July 28, 1999) (stating, "[the court] need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation," and finding complaint inadequate because of reliance on vague and conclusory assertions) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)). "Federal Rule of Civil Procedure 8(a)(2), establishing the requirements for an adequate complaint, does not entitle a plaintiff to rest on 'subjective characterizations' or conclusory descriptions of a 'general scenario which could be dominated by unpleaded facts.'" Arroyo-Santiago, 1999 U.S. App. LEXIS at *12 (quoting Correa-Martinez, 903 F.2d at 52-53); see also DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (plaintiff must "allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome," and stating, "[c]onclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition") (citations omitted).

Consequently, a plaintiff must set forth factual allegations with respect to each material element necessary to sustain recovery under some actionable legal theory. The First Circuit has discussed the dividing line between adequate "facts" and inadequate "conclusions." Cooperman v. Individual Inc., 171 F.3d 43, 47- 48 (1st Cir. 1999). "[I]t is only when conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes" and the court must "examine [the] factual allegations to see if they support the conclusions pled." Id. (internal quotation omitted).

As demonstrated below, the allegations in the Amended Complaint are subject to dismissal under these standards, as there is no legal possibility of Plaintiffs obtaining any relief based upon those claims.

## I. PLAINTIFFS' FIRST CAUSE OF ACTION FOR NEGLIGENCE MUST BE DISMISSED

Plaintiffs allege that FRGC's negligence caused Plaintiffs to suffer damages. This claim must be dismissed because, as a matter of law, the Amended Complaint fails to establish that FRGC owed any duty to Plaintiffs.

The Rhode Island Supreme Court has stated that "every negligence case begins with a consideration of whether a legally cognizable duty runs from the defendant to the plaintiff." Gray v. Derderian, 371 F. Supp. 2d 98, 104 (D.R.I. 2005) (quoting Kenney Mfg. Co. v. Starkweather & Shepley, Inc., 643 A.2d 203, 206 (R.I. 1994)). Whether such a duty exists is a question of law to be determined by the court. Hydro-Mfg. Inc. v. Kayser-Roth Corp., 640 A.2d 950, 955 (R.I. 1994) (citing Banks v. Bowen's Landing Corp., 522 A.2d 1222, 1224 (R.I. 1987)); Barratt v. Burlingham, 492 A.2d 1219, 1222 (R.I. 1985) (same).

No Rhode Island case has ever recognized the existence of a duty owed by a purported waste generator to subsequent purchasers of non-neighboring property upon which waste was disposed of years before the development of the property. Accordingly, as FRGC owed no duty to Plaintiffs, the negligence claim must be dismissed. See, e.g., Builders Specialties Co. v. Goulet, 639 A.2d 59, 60 (R.I. 1994) (Supreme Court upholding trial court's granting motion to dismiss negligence claim based on absence of duty to plaintiff).

Accordingly, Plaintiffs' cause of action for negligence must be dismissed.

## II. PLAINTIFFS' SECOND CAUSE OF ACTION FOR STRICT LIABILITY MUST BE DISMISSED

Plaintiffs' claim that FRGC is strictly liable for Plaintiffs' alleged damages similarly fails as a matter of Rhode Island law. Plaintiffs base this claim on the assertion that "[t]he coal byproducts released by [FRGC] is . . . an ultra-hazardous material and abnormally dangerous" (Compl. ¶ 36) and that FRGC's "use and storage of coal byproducts was an ultra-hazardous and abnormally dangerous activity . . ." (Compl. ¶ 37). However, this claim is fatally defective because, under Rhode Island law, the mere handling and disposal of hazardous waste is not an abnormally dangerous activity and thus states no claim for strict liability.

Under Rhode Island law, "[a]bsolute liability attaches only to ultrahazardous or abnormally dangerous ***activities*** and not to ultrahazardous or abnormally dangerous ***materials***." Splendorio v. Bilray Demolition Co., 682 A.2d 461, 465-66 (R.I. 1996) (citing G.J. Leasing Co. v. Union Elec. Co., 854 F. Supp. 539, 567-69 (S.D. Ill. 1994) (emphasis added). This view is consistent with that of the Second Restatement of Torts: "One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another

resulting from the *activity*, although he has exercised the utmost care to prevent the harm." Restatement (Second) of Torts § 519(1) (1977) (emphasis added).[4]

Central to the determination of whether an *activity* is abnormally dangerous so as to warrant the application of strict liability -- a question of law for the court, see Splendorio, 682 A.2d at 465 -- is whether the risks associated with the activity can be limited by the exercise of reasonable care. See Toledo v. Van Waters & Rogers, Inc., 92 F. Supp. 2d 44, 56 (D.R.I. 2000) (stating, "courts have focused on whether the risk involved could be reduced through the exercise of reasonable care"). Simply put, if an activity can be made safer through the exercise of reasonable care, the activity is not ultrahazardous as a matter of law. See Splendorio, 682 A.2d at 466 (while acknowledging that "asbestos is understandably an ultrahazardous or abnormally dangerous material," holding that the inspection of buildings for asbestos was not an abnormally dangerous activity because the activities could be carried out safely with the exercise of reasonable care) (emphasis added); Toledo, 92 F. Supp. 2d at 55-57 (under Rhode Island law, the transportation of barrels containing nitric and sulfuric acid was not in and of itself abnormally dangerous so as to warrant strict liability because such activity is routinely performed safely when parties exercise reasonable care).

No Rhode Island Court has ever held that the disposal of hazardous waste is an abnormally dangerous activity warranting the imposition of strict liability. To the contrary, other courts have specifically held, as a matter of law, that such an activity is not abnormally dangerous. For example, in Bernbach v. Timex Corp., the court dismissed, for failure to state a cause of action, strict liability claims based on soil and groundwater contamination resulting

4 Indeed, "[i]f the rule were otherwise, virtually any commercial activity involving substances which are dangerous in the abstract automatically would be deemed as abnormally dangerous. This result would be intolerable." Splendorio, 682 A.2d at 466 (quoting City of Bloomington, Ind. v. Westinghouse Elec. Corp., 891 F.2d 611, 615-17 (7th Cir. 1989).

from a manufacturing facility's disposal of various hazardous substances, where plaintiffs failed to allege "circumstances and conditions in . . . [defendant's] activities such that, irrespective of due care, the activities involve a risk of probable injury to such a degree that [they] fairly can be said to be intrinsically dangerous." 989 F. Supp. 403, 407 (D. Conn. 1996) (internal quotations omitted); see also Schwartzman, Inc. v. Gen. Elec. Co., 848 F. Supp. 942, 945 (D.N.M. 1993) (granting motion to dismiss strict liability claim based on disposal of petroleum products and other hazardous wastes; despite the fact that such materials "may present a substantial degree of risk to persons or property when mishandled," . . . the court held that "the risks can be eliminated through the exercise of reasonable care").[5]

The burden of coming forward with facts sufficient to support a theory of strict liability based on abnormally dangerous activities rests with Plaintiffs. See Fletcher, 129 F. Supp. 2d at 1260 (granting motion to dismiss strict liability count); Chaveriat v. Williams Pipe Line Co., 1994 U.S. Dist. LEXIS 15092, *17 (N.D. Ill. Oct. 18, 1994) (same). FRGC's alleged use, storage and disposal of coal byproducts was not so intrinsically dangerous as a matter of law that the risks involved could not be mitigated through the exercise of reasonable care. Indeed, the Rhode Island Department of Environmental Management ("RIDEM") and the Environmental

---

[5] Courts have routinely dismissed strict liability claims based on activities involving hazardous substances, where the risks associated with the activity could be limited by the exercise of due care. See, e.g., Marmo v. IBP, Inc., 362 F. Supp. 2d 1129, 1134 (D. Neb. 2005) (operation of a wastewater treatment facility generating hydrogen sulfide was not an abnormally dangerous activity because the risk of harm associated with its emission could be controlled with due care); Fletcher v. Conoco Pipe Line Co., 129 F. Supp. 2d 1255, 1261 (W.D. Mo. 2001) (dismissing strict liability claim where neither the operation of a petroleum pipeline nor the use of cathodic protection was an abnormally dangerous activity as a matter of law because they are easily regulated activities that can be performed safely); Arlington Forest Associates v. Exxon Corp., 774 F. Supp. 387, 390 (E.D. Va. 1991) (storage and removal of gasoline in underground tanks not abnormally dangerous because it could be made safe through the exercise of reasonable care).

Protection Agency ("EPA") have procedures for the safe handling and disposal of these wastes.[6]

Accordingly, FRGC did not engage in an ultrahazardous or abnormally dangerous activity, and Plaintiffs' claim premised upon strict liability must be dismissed.

## III. PLAINTIFFS' CAUSE OF ACTION FOR PRIVATE NUISANCE MUST BE DISMISSED

Plaintiff also alleges that FRGC created a private nuisance This claim too fails as a matter of law because FRGC's conduct does not satisfy the most essential element of a private nuisance cause of action -- that use of one's own real property interferes with the property of a "neighbor."

Under Rhode Island law, "a private nuisance 'arises from the unreasonable use of one's property that materially interferes with a neighbor's physical comfort or the neighbor's use of his real estate.'" Hydro-Mfg., Inc., 640 A.2d at 957 (quoting Weida v. Ferry, 493 A.2d 824, 826 (R.I. 1985)). Thus, a claim for private nuisance is premised on wrongful activity conducted *on a defendant's property*, which adversely affects a *neighbor*.

In this case, Plaintiffs cannot establish the existence of a private nuisance because the wrong alleged here -- the off-site transportation and disposal of waste generated by a manufacturing process -- is not an activity that occurred on FRGC's property, or a condition maintained by FRGC. See Saco Steel Co. v. Saco Defense, Inc., 910 F. Supp. 803, 812 (D. Me. 1995) (dismissing private nuisance claim where "[d]efendant's alleged activity on its land, generating hazardous substances, did not, by itself, cause injury to Plaintiff's neighboring land."); Hooksett Sch. Dist. v. W.R. Grace & Co., 617 F. Supp. 126, 133 (D.N.H. 1984)

---

[6] See RIDEM "Rules and Regulations For Hazardous Waste Management" which contain the rules (and which incorporate EPA's federal regulations) that govern the generation, transportation, treatment, storage and disposal of hazardous waste. See also Schwartzman Inc., 848 F. Supp. at 945 (noting that "the premise of many environmental laws . . . is that proper handling and disposal of these materials minimizes or eliminates the risk of their use").

(rejecting nuisance claim on the basis that the "[p]laintiff seeks to recover from [d]efendant not in its capacity as a property owner, but in its capacity as a manufacturer"). Plaintiffs cannot disguise this incontrovertible fact by alleging that their harm resulted from FRGC's "manufacturing and sale of natural gas." (Compl. ¶ 43). Even assuming *arguendo* that the waste at issue was initially generated at FRGC's manufactured gas plant, FRGC's use of its own property is clearly not at issue here because such manufacturing use is not alleged to have damaged Plaintiffs in any way.

Furthermore, Plaintiffs do not -- because they cannot -- allege that any of their properties were, at any time, a "neighbor" of any FRGC facility. In fact, Plaintiffs' properties are located about one mile -- a minimum of 10 city blocks and numerous intervening properties -- away from the nearest former Fall River manufactured gas plant. As such, Plaintiffs fail to establish the very heart of a private nuisance claim: that there exists a close physical proximity between Plaintiffs' property and FRGC's property, such that they can be described as "neighboring."[7] See Hydro-Mfg., Inc., 640 A.2d at 957 ("Historically the law of private nuisance has been applied to conflicts between neighboring, contemporaneous land uses."); see also Hennessey v. Pyne, 694 A.2d 691, 695 (R.I. 1997) (owner of a condominium could not claim private nuisance as a result of errant golf balls because, among other things, plaintiff and golf course were not "neighbors in the usual sense of the word"); Rockaway v. Klockner & Klockner, 811 F. Supp. 1039, 1057-58 (D.N.J. 1993) ("[p]rivate nuisance is confined to situations where one person's property use interferes with another's use of *neighboring* or *adjoining* property") (emphasis added).

Accordingly, Plaintiffs' cause of action for private nuisance must be dismissed.

---

[7] To be neighboring is to be situated near one another, to have a common boundary or edge, or to be touching. *WordNet ® 2.0, © 2003 Princeton University*

## IV. PLAINTIFFS' CAUSE OF ACTION FOR PUBLIC NUISANCE MUST BE DISMISSED

Plaintiffs' claim against NEGasCo for public nuisance must also be dismissed as a matter of law because Plaintiffs have failed to plead an essential element of public nuisance: an interference with a public right.

The Supreme Court of Rhode Island defines a public nuisance as "'an unreasonable interference with a right common to the general public.'" Hydro-Mfg., Inc. v. Kayser-Roth Corp., 640 A.2d at 957-58 (quoting Citizens for Pres. of Waterman Lake v. Davis, 420 A.2d 53, 59 (R.I. 1980)); (see Prosser, § 88, at 583 (4th ed. 1971) (defining a public nuisance as "an act or omission which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all Her Majesty's subjects") (internal quotation omitted).

In Iafrate v. Ramsden, the Rhode Island Supreme Court upheld the lower court's grant of a motion to dismiss a public nuisance claim for failure to allege interference with "any interest of plaintiffs *common to the general public*." 96 R.I. 216, 222 (R.I. 1963) (emphasis added). The Court noted that the injury suffered by plaintiffs caused by the collapse of a wall located on city-owned property "affected only persons on the city's premises, not the general public." Id. Similarly, in Hydro-Mfg., Inc., the Court held that the plaintiff could not sustain an action for public nuisance because the damages alleged as a result of contamination to plaintiff's own property "were in [plaintiff's] exercise of its private-property right, not in the exercise of a public right." 640 A.2d at 958. See also Milwaukee Metro. Sewerage Dist. v. City of Milwaukee, 691 N.W.2d 658, 670 (Wis. 2005) (defining a public nuisance as "a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community").

In the present case, Plaintiffs allege injuries to their properties and the reduction of their property values as a result of the contamination of those properties, not the properties used in common by all residents of Tiverton or any larger political subdivision. As such, they allege a harm only in the exercise of their *private property rights* and not in the exercise of any *public* right. Moreover, the mere fact that a large number of private property parcels have allegedly been affected by contamination does not convert this private injury into a public harm:

> *Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons. There must be some interference with a public right. A public right is one common to all members of the general public.* It is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured. Thus the pollution of a stream that merely deprives fifty or a hundred lower riparian owners of the use of the water for purposes connected with their land does not for that reason alone become a public nuisance. If, however, the pollution prevents the use of a public bathing beach or kills the fish in a navigable stream and so deprives all members of the community of the right to fish, it becomes a public nuisance.

Restatement (Second) Torts, § 821B, Comment G (1979) (emphasis added).[8] See also Milwaukee Metro. Sewerage Dist., 691 N.W.2d at 670 ("the distinction between a private and public nuisance is 'not the number of persons injured but the character of the injury and of the right impinged upon'") (quoting Costas v. City of Fond du Lac, 129 N.W.2d 217, 220 (Wis. 1964)).

Plaintiffs do not and cannot allege a harm to any public right. Accordingly, Plaintiffs' cause of action for public nuisance fails to state a claim and must be dismissed.

---

8 The Rhode Island Supreme Court in Hydro-Mfg., Inc. relied on the Restatement (Second) of Torts. 640 A.2d 958.

## V. PLAINTIFFS' CAUSE OF ACTION FOR TRESPASS MUST BE DISMISSED

Plaintiffs' claim against NEGasCo for trespass must also be dismissed for two independent reasons. First, because Plaintiffs fail to allege that FRGC's entry upon land -- before Plaintiffs acquired or occupied the land -- was unauthorized. Consequently, Plaintiffs' assertion that FRGC engaged in the "discharge [of] contaminants" (Compl. ¶ 51) on the land cannot support a trespass claim. Second, as a matter of law, there is no cause of action for trespass by a subsequent purchaser of land against a party that is alleged to have previously impacted such land.

"Liability for trespass to property requires an invasion of one person's property by another person who has no right or privilege to enter. " Wilson Auto Enterprises, Inc., 778 F. Supp. at 106 (citing Wellesley Hills Realty Trust v. Mobil Oil Corp., 747 F. Supp. 93, 99 (D. Mass. 1990) ("A trespass . . . requires an unprivileged, intentional intrusion on the land in the possession of another"). Thus, absent an "invasion," any entry upon or use of land by one who is lawfully on the land cannot, as a matter of law, support a claim of trespass brought by a subsequent purchaser of the land. Id. (holding that a previous lessee of land who left contaminants on the land is not liable for trespass to a subsequent purchaser of the land); Wellesley Hills, 778 F. Supp. at 99 (same).

Here, Plaintiffs do not -- because they cannot -- allege that FRGC's alleged entry upon land subsequently purchased or occupied by Plaintiffs was an "invasion" of the land. Since Plaintiffs do not allege that FRGC's entry upon their land was unauthorized, FRGC's conduct before Plaintiffs acquired the land does not support their claim of trespass. Thus, Plaintiffs' trespass claim fails as a matter of law and must be dismissed.

Plaintiffs' trespass claim must also be dismissed because, as a matter of law, a trespass claim cannot be brought by a subsequent purchaser of land against a party that is alleged to have previously impacted such land. See Wilson Auto Enterprises, Inc., 778 F. Supp. at 106 (holding that contaminants left on land before plaintiff acquired land, does not support cause of action for trespass).

Accordingly, Plaintiffs' cause of action for trespass fails to state a claim and must be dismissed.

## VI. PLAINTIFFS' DEMAND FOR PUNITIVE DAMAGES MUST BE DISMISSED

Finally, Plaintiffs seek punitive damages for FRGC's alleged improper conduct. (Compl. p. 15, ¶ c). This demand must be dismissed because Plaintiffs fail to allege any facts to support the imposition of punitive damages.

In order to properly plead a demand for punitive damages, "one must allege that the other party acted 'with the intent to cause harm.' Hence, merely reckless conduct that is not malicious, wanton, or willful is insufficient to support a claim for punitive damages." Hayes v. Don Law Co., 1996 U.S. Dist. LEXIS 22814, * 9-10 (D.R.I. June 20, 1996) (quoting Wilson Auto Enterprises, Inc., 778 F. Supp. at 107); Regan v. Cherry Corp., 706 F. Supp. 145, 153 (D.R.I. 1989).

Here, Plaintiffs have not alleged that FRGC acted with the requisite malice or wickedness. Moreover, the Amended Complaint does not contain a single factual allegation that supports such a contention. Therefore, Plaintiffs demand for punitive damages must be dismissed. As the court held in Wilson Auto:

> [Plaintiff] has not alleged facts that would justify punitive damages. In his complaint, [plaintiff] makes the conclusory statement that [defendant] acted 'with wantonness, recklessness,

> and outrageousness.' He fails, however, to allege malice or an intent to harm others. The Court is not merely pointing out that [plaintiff] neglected to employ particular adverbs: [Plaintiff] has not alleged any facts that would suggest that [defendant] acted with malice -- with an intention to cause harm. By charging [defendant] with wantonness and outrageousness, [plaintiff] alleges gross recklessness, but nothing more.

778 F. Supp. at 107.

Accordingly, Plaintiffs' demand for punitive damages should also be dismissed.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Amended Complaint should be dismissed.

Dated: Providence, Rhode Island
August 17, 2005

Respectfully Submitted,

**ADLER POLLOCK & SHEEHAN P.C.**

By: [signature]

John A. Tarantino (#2586)
Patricia K. Rocha (#2793)
David A. Wollin (#4950)
Kristen W. Sherman (#5595)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
1633 Broadway
New York, New York 10019
(212) 506-1700

- and -

**BISHOP, LONDON, BROPHY, & DODDS**
Christina Dodds
The Littlefield Building
106 E. 6th Street, Suite 700
Austin, Texas 78701
(512) 479-5900

*Attorneys for Defendant*
*New England Gas Company,*
*an unincorporated division of*
*Southern Union Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August, 2005, a copy of the foregoing was hand-delivered to the following:

Brian R. Cunha, Esq.
Brian Cunha & Associates, P.C.
904 Broadway
East Providence, RI 02914

April M Fontaine

342464_1.DOC