**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

KEVIN R. BURNS, FLORENCE J. BURNS,
LEONARD BOUCHARD, ALICE CAMBRA,
SUSAN M. FERREIRA, RAYMOND GAGNON,
CORRINE GAGNON, ANTONIO M. GUILHERME,
WILLIAM HILL, SR., JOANN HILL,
MICHAEL LEBEAU, CARRIE LEBEAU,
CAROL A. MATHEWS, KAREN OLIVEIRA,
RICHARD RAPOZA, LAUREN RAPOZA,
GRANT R. SCHOFIELD,
ELIZABETH TOKARZ-MACIEL, and
MARISSA MACIEL, ppa. ELIZABETH
TOKARZ-MACIEL, Mother and Next Friend
of Marissa Maciel, a Minor
MELANIE CREADOR, ROBERT CREADOR,
LUIS RESENDES, LOUISE RESENDES,
LUIS RESENDES, JR., LINDA RESENDES, and
DANIEL SCHREFFLER
COLLEEN BIGELOW, DONNA BRAGA,
RACHEL CARVALHO, ppa LORI A. CARVALHO,
Mother and Next Friend of Rachel Carvalho, a Minor,
THOMAS PATERSON, and THERESA PICARD,
MANUEL MENDONCA and DENISE MENDONCA
Plaintiffs

C.A. No.: 05-274-T
(Related Cases: 05-370T, 05-221T 05-022T)

VS.

NEW ENGLAND GAS COMPANY, formerly
known as FALL RIVER GAS COMPANY, an
unincorporated division of SOUTHERN
UNION COMPANY
Defendant

**<u>FURTHER AMENDED COMPLAINT AND JURY CLAIM</u>**

Plaintiffs, COLLEEN BIGELOW, DONNA BRAGA, RACHEL CARVALHO, ppa LORI A. CARVALHO, Mother and Next Friend of Rachel Carvalho, a Minor, THOMAS PATERSON, THERESA PICARD, KEVIN R. BURNS, FLORENCE J. BURNS, COLLEEN

BIGELOW, DONNA BRAGA, LEONARD BOUCHARD, ALICE CAMBRA, SUSAN M. FERREIRA, RAYMOND GAGNON, CORRINE GAGNON, ANTONIO M. GUILHERME, WILLIAM HILL, SR., JOANN HILL, MICHAEL LEBEAU, CARRIE LEBEAU, CAROL A. MATHEWS, KAREN OLIVEIRA, RICHARD RAPOZA, LAUREN RAPOZA, GRANT R. SCHOFIELD, ELIZABETH TOKARZ-MACIEL, and MARISSA MACIEL, ppa. ELIZABETH TOKARZ-MACIEL, Mother and Next Friend of Marissa Maciel, a Minor, THOMAS PATERSON, THERESA PICARD, MELANIE CREADOR, ROBERT CREADOR, LUIS RESENDES, LOUISE RESENDES, LUIS RESENDES, JR., LINDA RESENDES, and DANIEL SCHREFFLER, MANUEL MENDONCA & DENISE MENDONCA (hereinafter referred to as the "PLAINTIFFS") by their attorneys, BRIAN CUNHA & ASSOCIATES, P.C., for their complaint against NEW ENGLAND GAS COMPANY formerly known as FALL RIVER GAS COMPANY an unincorporated division of SOUTHERN UNION COMPANY, (hereinafter referred to as the "DEFENDANT")

## I. PARTIES

1. PLAINTIFFS are property owners and residents of the State of Rhode Island, and currently reside in the Town of Tiverton, Rhode Island. Their properties have been threatened with and/or contaminated with petroleum byproducts, including but not limited to, cyanide, arsenic, lead, mercury and napthalene, among other things.

   A. PLAINTIFF, Colleen Bigelow, is a resident of the State of Rhode Island, and currently resides at 290 Judson Street, Tiverton, Rhode Island 02878.

   B. PLAINTIFF, Donna Braga, is a resident of the State of Rhode Island, and currently resides at 40 Bottom Street, Tiverton, Rhode Island 02878.

C. PLAINTIFF, Thomas Paterson, is a resident of the State of Rhode Island, and currently resides at 191 Hilton Street, Tiverton, Rhode Island 02878.

D. PLAINTIFF, Theresa R. Picard, is a resident of the State of Rhode Island, and currently resides at 157 Lepes Road, Tiverton, Rhode Island 02878.

E. PLAINTIFF, Rachel Carvalho, ppa Lori A. Carvalho, Mother and Next Friend of Rachel Carvalho, a Minor, was a resident of Tiverton in the State of Rhode Island, previously residing at 51 State Avenue and currently resides at 2299 Alton Road, Port Charlotte, Florida 33952.

F. PLAINTIFF, Kevin R. Burns, is a resident of the State of Rhode Island, and currently resides at 185 Hilton Street, Tiverton, Rhode Island 02878.

G. PLAINTIFF, Florence J. Burns, is a resident of the State of Rhode Island, and currently resides at 185 Hilton Street, Tiverton, Rhode Island 02878.

H. PLAINTIFF, Colleen Bigelow, is a resident of the State of Rhode Island, and currently resides at 290 Judson Street, Tiverton, Rhode Island 02878.

I. PLAINTIFF, Donna Braga, is a resident of the State of Rhode Island, and currently resides at 40 Bottom Street, Tiverton, Rhode Island 02878

J. PLAINTIFF, Leonard Bouchard, is a resident of the State of Massachusetts, and currently resides at 151 Kempton Street, Fall River, Massachusetts.

K. PLAINTIFF, Alice Cambra, is a resident of the State of Rhode Island, and currently resides at 18 Hilton Street, Tiverton, Rhode Island, 02878.

L. PLAINTIFF, Susan M. Ferreira, is a resident of the State of Rhode Island, and

currently resides at 196 Hooper Street, Tiverton, Rhode Island, 02878.

M. PLAINTIFF, Raymond Gagnon is a residents of the State of Rhode Island, and currently resides at 295 Judson Street, Tiverton, Rhode Island, 02878.

N. PLAINTIFF, Corrine Gagnon are residents of the State of Rhode Island, and currently reside at 295 Judson Street, Tiverton, Rhode Island, 02878.

O. PLAINTIFF, Antonio M. Guilherme, is a resident of the State of Rhode Island, and currently resides at 76 Canonicus Street, Tiverton, Rhode Island, 02878.

P. PLAINTIFF, William Hill, is a resident of the State of Rhode Island, and currently resides at 330 Canonicus Street, Tiverton, Rhode Island, 02878.

Q. PLAINTIFF, Joann Hill, is a resident of the State of Rhode Island, and currently resides at 330 Canonicus Street, Tiverton, Rhode Island, 02878.

R. PLAINTIFF, Michael Lebeau, is a resident of the State of Rhode Island, and currently resides at 14 Last Street, Tiverton, Rhode Island, 02878.

S. PLAINTIFF, Carrie Lebeau, is a resident of the State of Rhode Island, and currently resides at 14 Last Street, Tiverton, Rhode Island, 02878.

T. PLAINTIFF, Carol A. Matthews, is a resident of the State of Rhode Island and currently resides at 93 Kaufman Road, Tiverton, Rhode Island, 02878, and owns property located at 56 Lepes Road, Tiverton, Rhode Island, 02878.

U. PLAINTIFF, Karen Oliveira, is a resident of the State of Rhode Island and currently resides at 100 Clegg Avenue, Tiverton, Rhode Island, 02878.

V. PLAINTIFF, Richard Rapoza, is a resident of the State of Rhode Island and currently resides at 327 Canonicus Street, Tiverton, Rhode Island, 02878.

W. PLAINTIFF, Laureen Rapoza, is a resident of the State of Rhode Island and currently resides at 327 Canonicus Street, Tiverton, Rhode Island, 02878.

X. PLAINTIFF, Garant R. Schofield, is a resident of the State of Rhode Island and currently resides at 191 Canonicus Street, Tiverton, Rhode Island, 02878.

Y. PLAINTIFF, Elizabeth Tokarz-Maciel, is a resident of the State of Rhode Island, and currently resides at 124 Lepes Road, Tiverton, Rhode Island; and

Z. PLAINTIFF, Marissa Maciel, ppa. Elizabeth Tokarz-Maciel, is a minor and suit is brought through her Mother and Next Friend, both are residents of the State of Rhode Island, and currently reside at 124 Lepes Road, Tiverton, Rhode Island 02878;

AA. PLAINTIFF, Thomas Paterson, is a resident of the State of Rhode Island, and currently resides at 191 Hilton Street, Tiverton, Rhode Island 02878

BB. PLAINTIFF, Theresa R. Picard, is a resident of the State of Rhode Island, and currently resides at 157 Lepes Road, Tiverton, Rhode Island 02878

CC. PLAINTIFF, Manuel Mendonca, is a resident of the State of Rhode Island, and currently resides at 644 Stafford Road, Tiverton, Rhode Island 02878.

DD. PLAINTIFF, Denise Mendonca, is a resident of the State of Rhode Island, and currently resides at 644 Stafford Road, Tiverton, Rhode Island 02878.

2. PLAINTIFFS were tenants and residents of the State of Rhode Island, and currently reside in the Town of Tiverton, Rhode Island, and Fall River, Massachusetts. Their properties were threatened with and/or contaminated with petroleum byproducts,

including but not limited to, cyanide, arsenic, lead, mercury and napthalene, among other things.

CC. PLAINTIFF, Robert Creador, was a resident of Tiverton in the State of Rhode Island, and currently resides at 146 New Jersey Avenue, Somerset, Massachusetts;

DD. PLAINTIFF, Melanie Creador, was a resident of Tiverton in the State of Rhode Island, and currently resides at 146 New Jersey Avenue, Somerset, Massachusetts; and

EE. PLAINTIFF, Luis Resendes, was a resident of Tiverton in the State of Rhode Island, and currently resides at 76 Bowler Street, Fall River, Massachusetts; and

FF. PLAINTIFF, Louise Resendes, was a resident of Tiverton in the State of Rhode Island, and currently resides at 76 Bowler Street, Fall River, Massachusetts; and

GG. PLAINTIFF, Luis Resendes, Jr., was a resident of Tiverton in the State of Rhode Island, and currently resides at 76 Bowler Street, Fall River, Massachusetts; and

HH. PLAINTIFF, Linda Resendes, was a resident of Tiverton in the State of Rhode Island, and currently resides at 76 Bowler Street, Fall River, Massachusetts; and

II. PLAINTIFF, Daniel Schreffler, is a resident of the State of Rhode Island, and currently resides at 545 West DeMello Drive, Tiverton, Rhode Island.

3. DEFENDANT, New England Gas, an unincorporated division of Southern Union Company and formerly known as Fall River Gas Company, was and is a duly organized corporation authorized to do business in the State of Rhode Island.

4. DEFENDANT, New England Gas Company, formerly known as Fall River Gas Company an unincorporated division of Southern Union Company, was and is a duly organized

domestic corporation authorized to do business in the State of Rhode Island.

5. When, in this complaint, reference is made to any act of the DEFENDANT, such reference shall be deemed to include the officers, directors, agents, employees, or representatives of the DEFENDANT who committed or authorized such acts, or failed to and omitted to adequately supervise or to properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of the DEFENDANT.

## II. FACTS

6. On or about August 2002, during construction and installation of the Mount Hope Bay Sewer Interceptor Projects in Tiverton, Rhode Island, the sewer contractor, Starwood Tiverton, LLC, as operator of the project, contracted with D'Ambra Construction to conduct excavation activities in the vicinity of Bay Street at the intersection with Judson Street and Last Street.

7. The excavation activities conducted by D'Ambra Construction included the stockpiling of soils on the corner of Judson and Bay Street and at the bottom of Last Street Tiverton.

8. Complaints received by the State Rhode Island Department of Environmental Management [hereinafter "RIDEM"] concerning the stockpiled soils initiated and investigation by a member of the RIDEM hazardous materials response team.

9. The RIDEM field investigator observed that the stockpiled soils placed by the sewer contractor at the corner of Judson and Bay Street and at the bottom of Last Street had a blue color associates with it, indicative of historic coal gasification waste material.

10. RIDEM had the stockpiled soils analyzed by RIDEM's contractor laboratory.

11. The laboratory analysis of the stockpiled soils revealed the presence of cyanide and other hazardous substances in the stockpiled soils.

12. On October 8, 2002, RIDEM issued a Letter of Responsibility to the Town of Tiverton as the owner of the property and the Starwood Tiverton, LLC as the operator of the sewer installation project.

13. In or about November 2002, EA Engineering, on behalf of the Town of Tiverton and Starwood Tiverton, LLC conducted a subsurface investigation beneath portions of the following public roads and public streets in Tiverton as far north as State Avenue: Bay, Judson, Hooper Hilton, Canonicus, Chase, and Foote.

14. The EA Engineering subsurface investigation revealed the presence of toxic and hazardous substances, including total petroleum hydrocarbons (TPH), semi-volatile organic compounds (SVOCs), lead, arsonic and cyanide in the soils.

15. Additional analytic testing of the contaminated soils determined that some contained toxic and hazardous substances, including poly aromatic hydrocarbons (PAHs), cyanide and naphthalene at levels exceeding the Residential and Industrial/Commercial Direct Exposure Criteria.

16. The results reported by E.A. Engineering indicated to RIDEM that there was a more wide spread problem with the contaminated soil than had been assumed as the fill containing contaminated soil extended beyond the sewer pipeline right of way and beneath areas of the public roads and public streets in the adjacent community.

17. On or about March 13, 2003, RIDEM met with representatives from the Town of

Tiverton who provided historical information to RIDEM concerning the area of Tiverton that was the subject of the RIDEM activities.

18. Historical information provided to RIDEM by the Town of Tiverton included documentation citing a former employee of Fall River Gas Company concerning disposal of "blue soil".

19. Based on the foregoing, RIDEM concluded that some of the properties in this residential area of Tiverton were filled with contaminated coal gasification waste from Fall River Gas Company prior to the construction of the homes and that undeveloped property to the south of the residential development may also have been filled with contaminated coal gasification waste material from Fall River Gas Company.

20. On March 17, 2003, RIDEM issued a Letter of Responsibility to New England Gas Company/Southern Union Company stating in part:

> RE: Historical Manufactured Gas Plant Contaminated Soils in Tiverton, Rhode Island (former Fall River Gas Co. ) along Bay Street, Judson Street, Canonicus Street, and adjoining property (i.e. "the site"). The contaminated soil appears to contain historical manufactured coal gasification materials.
>
> Based upon the information identified to date, Southern Union Company, as the owner of the former Fall River Gas Company (d.b.a. New England Gas Co.), is identified as a Responsible Party as defined by Rule 3.44 for the improper disposal of contaminated soils.

21. Soil with a blue color indicates the presence of coal gasification waste material.

22. Fall River Gas Company was involved with coal gasification.

23. Coal gasification waste material contains lead, arsenic, cyanide and other hazardous

substances.

24. Subsequent testing, field work, observations, information and analysis confirmed that properties in the site, a residential area of Tiverton where Plaintiffs own property and reside, were deliberately filled by the DEFENDANT with coal gasification waste containing lead arsenic, cyanide, and other hazardous substances that contaminated the soil.

25. On August 25, 2003, the Town Council of the Town of Tiverton placed an "Emergency Moratorium" on all property within the following borders: bordered on the west by the waterfront; bordered on the north by the Rhode Island/Massachusetts state line; bordered on the east by Church Street from end to end and then continued as a drawn line to a point northerly that meets the state line and continued southerly as a drawn line to a point northerly that meets the state line and continued southerly as a drawn line to a point that meets Lepes Road; and bordered on the south by the center of Lepes Road [hereinafter "Emergency Moratorium Area"]

26. A letter dated August, 27, 2003 form the Town of Tiverton to all Property Owners in the Northwest Quadrant of Tiverton states in part:

> The "Emergency Moratorium" prohibits immediately any excavation within the bordered area. Additionally, any building permit that requires excavation will not be issued within the area.
>
> (RIDEM) and the Department of Health are currently working with the residents and town regarding contaminated soil within the bordered area.
>
> Remember, the "Emergency Moratorium" includes all type of Excavation on your property.

27. Testing on properties in the Emergency Moratorium Area, including properties owned by

Plaintiffs, properties abutting properties owned by the Plaintiffs, and properties in the vicinity of properties owned by Plaintiffs, has revealed the presence of hazardous substances such as lead, arsenic and cyanide.

## III. NEGLIGENCE

28. PLAINTIFFS repeat and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 27 inclusive.

29. DEFENDANT, New England Gas Company, formerly known as Fall River Gas Company, manufactured and/or stored natural gas.

30. DEFENDANT, New England Gas Company, formerly known as Fall River Gas Company, used coal during the manufacturing process of the natural gas. The byproducts of the manufacturing process reported hazardous waste and included, but was not limited to the following chemicals: cyanide, arsenic, lead, mercury, and napthalene.

31. The byproducts of coal's propensity to contaminate soil is so menacing that the defendant knew or should have known that by placing said byproducts into the soil containers, would pose a significant threat to plaintiff's property.

32. Despite DEFENDANT'S past and current knowledge of coal byproducts' harmful characteristics, DEFENDANT placed, said contaminants into the soil of the residents of The Town of Tiverton, Rhode Island.

33. The byproducts of coal should not have been distributed and/or stored on said private properties without proper education and without warning of the byproducts' propensity to contaminate the soil. Moreover, DEFENDANT should have properly educated and warned the governmental agencies, and private property owners and the public (including

PLAINTIFFS) of coal byproducts' negative environmental characteristics.

34. Prior to storing and distributing the coal byproducts into the soil, DEFENDANT knew or should have known that in the event that said byproducts were handled, disposed of or released into soil, it would not be biodegradable or bioremediated and would cause harm to the PLAINTIFFS.

35. DEFENDANT owed PLAINTIFFS a duty of due care which could be satisfied by safe and proper use, transport, management, storage, and disposal of its petroleum related products. DEFENDANT had a specific duty to prevent the dispose of such substances which might harm the persons, property or economic interests of PLAINTIFFS. DEFENDANT also had a specific duty to warn or notify PLAINTIFFS of the potential hazards of exposure to toxic and hazardous substances and to warn or notify PLAINTIFFS that discharges or releases of these substances had occurred, were likely to occur in the future and threatened PLAINTIFFS.

36. DEFENDANT breached these duties by their negligent, and reckless management, disposed, transport, storage, and use of its coal byproducts. DEFENDANT'S reckless, negligent, and illegal conduct resulted in the actual dangerous releases of hazardous and toxic substances into the PLAINTIFFS' properties. These actual and continued releases and discharges have subjected PLAINTIFFS to unreasonable risk of harm, threat of future harm, and to actual injuries to their properties, economic interests and persons. DEFENDANT also failed to warn PLAINTIFFS of the actual and threatened releases of such substances and of the reasonably foreseeable effects of such releases, an omission

that was reckless, grossly negligent, and/or negligent. DEFENDANT failed to and continues to fail to remove said hazardous substances resulting in further harm to PLAINTIFFS.

37. DEFENDANT'S negligence was a direct and proximate cause of injuries to PLAINTIFFS causing both actual present harm to PLAINTIFFS' properties and economic interests and creating an increased risk of personal harm to PLAINTIFFS, as well as inconvenience and interference with the use and enjoyment of their properties. PLAINTIFFS are entitled to recover damages for such injuries and anticipated additional costs for their damages.

38. All injuries and damages to PLAINTIFFS are substantial. Many of PLAINTIFFS' injuries, however, are as yet undeterminable in magnitude. The amount of damage for the injuries will be established at trial.

## NEGLIGENCE
## DUTY TO PREVENT AND TO WARN

## IV. DUTY TO PREVENT

39. PLAINTIFFS repeat and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 38 inclusive.

40. DEFENDANT breached its duty to make its product safe before disposing of it onto plaintiffs' properties. Specifically, DEFENDANT failed to take appropriate precautions to protect PLAINTIFFS' soil, from being threatened and/or contaminated with coal byproducts. In failing to take adequate steps to prevent soil contamination, DEFENDANT also breached its duty to protect PLAINTIFFS' exposure to contaminated

soil.

41. DEFENDANT further negligently breached its duty to prevent coal byproducts from being disposed of, discharged and released from trucks, storage tanks, barrels, and pipe lines into the soil.

42. DEFENDANT, after a substantial amount of coal byproducts were disposed onto the soil, failed to prevent the threat of continued migration of said byproducts into the soil, which continues to threaten PLAINTIFFS' properties. DEFENDANT knew, or should have known, that the coal byproducts contaminated soil that may poison PLAINTIFFS' infrastructure and water supply for many years. DEFENDANT was in a position to stop this threat and/or contamination from spreading and yet did nothing.

## V. DUTY TO WARN

43. PLAINTIFFS repeat and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 20 inclusive.

44. DEFENDANT failed in its duty to warn public agencies and private property owners of coal byproducts' propensity to contaminate PLAINTIFFS' properties. Moreover, DEFENDANT failed to warn PLAINTIFFS and the Town of Tiverton that, as a result of having coal byproducts placed into the soil, their property was in danger of being contaminated.

45. PLAINTIFFS' injuries were a foreseeable result of DEFENDANT'S placement of coal byproducts into the soil.

46. As a direct and proximate result of DEFENDANT'S negligent breach of its duties, as outlined above, PLAINTIFFS has suffered extensive damages in an amount to be proven

contamination. DEFENDANT has left PLAINTIFFS and the community to remediate the contamination knowing that PLAINTIFFS did not have the expertise or the resources to properly remediate the contamination that DEFENDANT created.

54. As a direct and proximate result of DEFENDANT'S breach of its duties, as outlined above, PLAINTIFFS have suffered extensive damages in an amount to be proven at trial.

55. Moreover, DEFENDANT willfully and intentionally breached its duty of care and acted with conscious disregard of PLAINTIFFS' safety.

56. PLAINTIFFS have suffered great harm from DEFENDANT'S conduct and is entitled to recover punitive or exemplary damages.

## VII. <u>ABNORMALLY DANGEROUS ACTIVITY ABSOLUTE OR STRICT LIABILITY</u>

57. PLAINTIFF realleges and incorporates by reference as if fully set forth herein Paragraphs 1 through 56, inclusive.

58. The coal byproducts released by DEFENDANT is toxic and hazardous and capable of causing severe personal injuries to persons coming into contact with it and, as such, is an ultra-hazardous material and abnormally dangerous.

59. The use and storage of coal byproducts was an ultra-hazardous and abnormally dangerous activity, subjecting persons coming into contact with coal byproducts a severe risk of harm, regardless of the degree of caution which DEFENDANT might have exercised. The risk of such an activity was not and is not outweighed by any value associated with its use to the community.

60. In addition, with full knowledge of the environmental and health hazards associated with the disposal and release of coal byproducts, DEFENDANT disposed said toxic byproducts in the vicinity and on the PLAINTIFFS' property. Although PLAINTIFFS maintain that DEFENDANT'S activities were abnormally dangerous per se, the location of such activities in a well-populated area such as a residential area in the Town of Tiverton would independently have rendered them abnormally dangerous.

61. As a direct and proximate result of DEFENDANT'S use, sale and storage of natural gas containing coal byproducts, contaminants were released into the environment, thereby injuring PLAINTIFFS, which include actual present harm to their property and economic interests, and potential future harm to PLAINTIFFS due to the threat of future contamination, as well as inconvenience and interference with the use and enjoyment of their property. These injuries constitute the type and harm which made the activities abnormally dangerous.

62. By reason of the foregoing, DEFENDANT is strictly liable in tort for the damages sustained by PLAINTIFFS.

63. All injuries and damages to PLAINTIFFS are substantial; however, many of the injuries to PLAINTIFFS are as yet undetermined in magnitude. The amount of damage for some of PLAINTIFFS' injuries will be established at trial.

## VIII. PRIVATE NUISANCE

64. PLAINTIFFS realleges and incorporates by reference as if fully set forth herein Paragraphs 1 through 63, inclusive.

65. At all times material hereto, PLAINTIFFS was in lawful possession of their land.

DEFENDANT'S use, manufacturing and sale of natural gas has resulted in an intrusion and the continued intrusion upon PLAINTIFFS' properties, significantly and negatively impacting upon PLAINTIFFS' right to use and enjoy their property.

66. Specifically, DEFENDANT'S unreasonable emission, disposal and release of toxic and hazardous substances into PLAINTIFFS' soil, was substantially offensive, discomforting and annoying to persons of ordinary sensibilities, tastes, and habits.

67. DEFENDANT'S interference with PLAINTIFFS' rights were so unusual and excessive that it necessarily caused injury, damage, harm and inconvenience to PLAINTIFFS, and it substantially, materially and unusually interfered with their comfort, and with the proper use and enjoyment of their properties. PLAINTIFFS' specific damages include, but are not limited to, remediation costs attributable to the presence of contaminants on her property. Such invasion of PLAINTIFFS' rights were unreasonable.

68. DEFENDANT'S use, manufacturing and sale of natural gas has resulted in an entry and intrusion, and the continued entry and intrusion onto the property of PLAINTIFFS without privilege, permission, invitation or justification. DEFENDANT'S conduct directly and proximately caused PLAINTIFFS' injuries, including actual or increased harm to their property and economic interests and injuries to their persons, as well as inconvenience and interference with the use and enjoyment of their properties. PLAINTIFFS are entitled to recover damages for such injuries.

69. All injuries and damages to PLAINTIFFS are substantial. Many of PLAINTIFFS' injuries, however, are as yet undetermined in magnitude. The amount of damages for some of the injuries will be established at trial.

## X. TRESPASS

70. PLAINTIFFS realleges and incorporates by reference as if fully set forth herein Paragraphs 1 through 69, inclusive.

71. PLAINTIFFS were at all relevant times in possession of land they owned and/or occupied.

72. Upon information and belief, DEFENDANT knew its intentional discharge or contaminants had migrated into PLAINTIFFS' properties.

73. Upon information and belief, despite DEFENDANT'S knowledge of the harm caused by the placement of coal byproducts in the soil, DEFENDANT intentionally persisted in its conduct and continued to discharge said contaminants.

74. Upon information and belief, the discharge which DEFENDANT knew or should have known was placed into PLAINTIFFS' soil and property, constitutes a trespass.

75. Upon information and belief, PLAINTIFFS' real property, continues to be threatened, exposed to and/or contaminated by hazardous chemicals and materials originating at DEFENDANT'S plant.

76. DEFENDANT'S manufacturing of natural gas has resulted in an entry and intrusion onto PLAINTIFFS' property without privilege, permission, invitation or justification.

77. DEFENDANT'S conduct directly and proximately caused PLAINTIFFS' injuries, including actual physical harm to property and economic interests and an increased risk of future harm to her person, as well as inconvenience and interference with the use and enjoyment of her property. PLAINTIFFS are entitled to recover damages for such injuries.

78. All injuries and damages to PLAINTIFFS are substantial. Many of PLAINTIFFS' injuries, however, are as yet undetermined in magnitude. The amount of damages for such injuries will be established at trial.

## XI. PUBLIC NUISANCE

79. PLAINTIFFS reallege and incorporates by reference as if fully set forth herein Paragraphs 1 through 78, inclusive.

80. DEFENDANT has manufactured and disposed of its product in a manner that has unreasonably endangered or injured the property, health, safety and comfort of PLAINTIFFS and other town residents, causing inconvenience and annoyance.

81. Actual coal byproduct contamination caused by DEFENDANT'S conduct has caused injury to PLAINTIFFS in the form of present serious interference with the use, benefit and/or enjoyment of her property, in a way that an ordinary reasonable person would define as substantial inconvenience, annoyance, and injury.

82. DEFENDANT has violated and/or threatened to violate PLAINTIFFS' right to contaminate free soil.

83. As a direct and proximate result of DEFENDANT'S acts and omissions creating the above-described nuisance, PLAINTIFFS have suffered special injuries to their properties, including but not limited to, the threat and/or actual contamination by coal byproducts, reduction of their property values and the costs associated with removing said contamination.

## XII. NEGLIGENCE INFLICTION OF EMOTIONAL DISTRESS

84. PLAINTIFFS reallege and incorporates by reference as if fully set forth herein Paragraphs 1 through 83, inclusive.

85. The DEFENDANT'S acts and omissions as described above represent conduct that is so outrageous is character and so extreme in degree as to go beyond all possible bounds of decency.

86. The DEFENDANT knew or was reckless in not knowing that its acts and omissions would inflict emotional distress on the Plaintiffs.

87. The DEFENDANT's acts and omissions have in fact inflicted severe emotional distress on all or some of the Plaintiffs and the Defendant is liable for the resulting damages PLAINTIFFS have suffered and will continue to suffer.

## XIII. UNAUTHORIZED DISPOSAL OF HAZARDOUS WASTE

88. PLAINTIFFS reallege and incorporates by reference as if fully set forth herein Paragraphs 1 through 87, inclusive.

89. The DEFENDANT, acting in a willful and knowing manner, engaged in the transportation, storage, or disposal of hazardous wastes in a manner or location not authorized by R.I. GEN. LAWS § 23-19.1-22 (1956) and has, therefore, caused the unauthorized transportation, storage, or disposal of hazardous wastes through its activities in disposing of and/or unauthorized transportation, storage, or disposal of hazardous wastes through its activities in disposing of and/or releasing hazardous substances, including coal gasification waste material containing lead, arsenic, and cyanide that was

used as fill in the Emergency Moratorium Area.

90. The Defendant is liable for treble the amount of the costs, damages, losses, or injuries suffered by the Plaintiffs as a direct and proximate result of their conduct.

## XIX. PRAYER FOR RELIEF

**WHEREFORE,** PLAINTIFFS demand judgment in their favor against DEFENDANT:

a. A declaration by the Court that DEFENDANT has been and continues to be in violation of the above legal duties;

b. Awarding PLAINTIFFS compensatory damages in an amount in excess of this Court's minimal jurisdictional limits;

c. Awarding PLAINTIFFS punitive damages in an amount to be determined by a trier of fact;

d. Awarding PLAINTIFFS the costs of this lawsuit, including but not limited to, attorneys' fees and expert costs as authorized by statute and the applicable rules of this Court;

e. Enjoining DEFENDANT from allowing the continued placement and migration of coal byproducts onto PLAINTIFFS' soil and property;

f. Awarding PLAINTIFFS the diminution in their property values;

g. Requiring DEFENDANT to pay all future costs incurred by PLAINTIFFS for the costs associated with obtaining alternative housing;

h. Requiring DEFENDANT to pay all of PLAINTIFFS' costs associated with the diminished property values as a result of the contamination;

i. Preliminary and permanent injunctions to pay money into a fund sufficient to clean and remediate the contamination that DEFENDANT caused to be discharged into PLAINTIFFS' soil;

j. An Order mandating that DEFENDANT and its successors and assigns, to take every action necessary to assure that all relief requested herein is obtained and fully funded;

k. Awarding PLAINTIFFS sufficient sums to compensate her for past, present and future pain and suffering, lost wages and reasonable medical expenses, including but not limited to, medical monitoring;

l. Awarding PLAINTIFFS such other, further, and different relief as the Court may deem appropriate and just; and

m. Trial by Jury.

/s/ Brian R. Cunha
Brian R. Cunha, Esquire #4074
BRIAN CUNHA & ASSOCIATES
311 Pine Street
Fall River, MA 02720
Tel: (508) 675-9500
Fax: (508) 679-6360

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that all counsel of record are so registered.

/s/ Brian R. Cunha
Brian R. Cunha, Esq.

Dated: December 1, 2006