AO88 (Rev. 12/06) Subpoena in a Civil Case **Issued by the**

# UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

**Gail Corvello, et al.**
**Kevin Burns, et al.**
**Colleen Bigelow, et al. and**
**Sheila Reis, et al.**

**v.**

**New England Gas Company, Inc.**

**SUBPOENA IN A CIVIL CASE**

**Case Numbers:**[1]
**05-221T, 05-274T, 05-370T, 05-522T**

**To: CUSTODIAN OF RECORDS – SHELL OIL**
**c/o Corporation Service Company**
**222 Jefferson Boulevard, Suite 200**
**Warwick, RI 02888**

YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

PLACE OF DEPOSITION **ADLER POLLOCK & SHEEHAN P.C., One Citizens Plaza, 8th Floor, Providence, RI 02903**

**Date and Time: Wednesday, April 18, 2007 at 10:00 a.m.**

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): ***SEE* SCHEDULE A ATTACHED**

PLACE **ADLER POLLOCK & SHEEHAN P.C., One Citizens Plaza, 8th Floor, Providence, RI**

**Date and Time: Wednesday, March 28, 2007 at 10: 00 a.m.**

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

PREMISES

DATE AND TIME

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) DATE

David A. Wollin (4950)

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER **David A. Wollin, Esq., Adler Pollock & Sheehan P.C.,**
**One Citizens Plaza, 8th Floor, Providence, RI 02903 (401- 274-7200)**
**Attorney for Defendant New England Gas Company, Inc.**

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1]If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

DATE 2 March, 2007 PLACE Warwick, R.I.

SERVED

Shell Oil, Recordkeeper

SERVED ON (PRINT NAME)

Served on authorized agent for service Corporation Service Company

MANNER OF SERVICE

George R. Clark

SERVED BY (PRINT NAME)

Constable #6025

TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 2 March, 2007

DATE

SIGNATURE OF SERVER

George R. Clark Constable #6025

ADDRESS OF SERVER

84 Weaver Rd., Johnston, R.I. 02919

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(I) A parry or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents ortangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this mle, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the parry or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises - or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this mle, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a parry to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or arms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2)(A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly rearn, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to *obey* exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph ©(3)(A).

410008_1.doc

## SCHEDULE A

### Definitions

1. "You" and "your" means the Shell Oil Company and each of its current and former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments and operating units, and includes, without limitation, each of its current and former partners, directors, shareholders, employees, officers, agents, officials, representatives, associates, consultants, attorneys, advisors, accountants and all persons and entities acting or purporting to act on their behalf.

2. "Shell" means the Shell Oil Company and each of its current and former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments and operating units, and includes, without limitation, each of its current and former partners, directors, shareholders, employees, officers, agents, officials, representatives, associates, consultants, attorneys, advisors, accountants and all persons and entities acting or purporting to act on their behalf.

3. "Service Station" means a gas station, filling station, fueling station, automobile mechanic repair shop, automobile parts supplier or any other business engaged primarily in the wholesale and/or retail of automobile parts or in the servicing and repair of automobiles or in the selling of fuels and lubricants for motor vehicles.

4. "Tank Farm" means the property located at One New Street (North Main Street) in Fall River, Massachusetts.

5. "Tiverton" means the Town of Tiverton, Rhode Island.

6. The "Bay Street Area" means the Bay Street Neighborhood Study Area located in Tiverton, Rhode Island, including all land within one-quarter of a mile of the Bay Street Neighborhood Study Area.

7. "Fall River" means the City of Fall River, Massachusetts.

8. The "1973 Fire" means the fire that occurred in 1973 at the Tank Farm.

9. "Hurricane of 1938" means the hurricane that devastated parts of Fall River, Massachusetts in 1938.

10. "Hurricane Carol of 1954" means the hurricane that devastated parts of Rhode Island in August/September of 1954.

11. "Pipeline" means the pipeline that Shell built across the parcel of land located between North Main Street and the railroad tracks in Fall River.

12. "Communications" shall be interpreted in its broadest sense and means any transmission or exchange of thoughts, ideas, data, messages, inquiries or information of any kind, whether or not intended for exchange with any person, whether such transmissions or exchanges are generated, transcribed or recorded orally, in writing, in meetings, personally, electronically or otherwise.

13. "Concerning," "relating to," and/or "regarding" mean referring to, bearing upon, summarizing, reflecting, constituting, containing, embodying, mentioning, showing, comprising, evidencing, supporting, discussing, describing, commenting upon, alluding to, pertaining to, probative of, in connection with, dealing with, in respect of, about, involving, indicating, identifying, memorializing, proving, having anything to do with, or contradicting, in any way, in whole or in part, the subject matter referred to in the request.

14. "Document" means any kind of written or graphic matter, however produced and reproduced, including matter written or produced by hand, typed, recorded, taped, photocopies, filed, telecopied, filmed, microfilmed, transcribed or otherwise created, generated or prepared, and including all originals, masters, drafts and non-identical copies bearing notations or marks not found on the originals, whether sent or received, and including without limitation any and all correspondence, memoranda, drafts, notes, diaries, cards, letters, statistics, summaries, analyses, submissions, applications, forms, reports, sketches, drawings, designs, specifications, telegraphs, minutes, agendas, schedules, contracts, agreements, addendums, studies, files, affidavits, financial records, account statements, checks, check stubs, general ledgers, calculations, journals, ledgers, brochures, manuals, pamphlets, books, magazines, articles, instructions, directions, directives, rules, regulations, policy books, guidelines, work plans, questionnaires, surveys, licenses, vouchers, blueprints, notebooks, catalogues, bids, prospectuses, transcripts, stenographic and handwritten notes, regulatory reports or filings, publications, circulars, pictures, films, computer printouts, computer disks, computer tapes, computer data, computer memory, e-mails, affidavits, declarations, expense records, logs, voice recordings, charts, compilations, press releases, resumes, inter-office and intra-office communications, offers, bulletins, worksheets, papers, photographs, graphs, microfiche, microfilm, videotape, motion pictures, audio tape, cassettes, discs, and other data compilations of any kind or in any other form capable of being read, heard or otherwise understood.

15. The words "and" and "or" shall be construed either conjunctively or disjunctively so as to bring within the scope of this subpoena any information or documents that might otherwise be considered beyond its scope.

16. The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular, so as to bring within the scope of this subpoena any information or documents that might otherwise be considered to be beyond its scope.

17. The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each," so as to bring within the scope of this subpoena any information or documents that might otherwise be considered to be beyond its scope.

18. All phrases following the terms "including," "including, but not limited to" and "including, without limitation" are intended to illustrate the kinds of matters that are responsive to this subpoena. Such examples are not intended to be exhaustive of the materials sought and should not in any way be read to limit the scope of the request.

19. "Identify" when used with reference to a natural person means to (a) state the individual's full name; (b) state the name and address of present employment; (c) state the present position of employment and department if still employed; and (d) state the present residence of the person.

20. "Identify" when used to refer to an entity other than a natural person, means to state its full name, the present or last known address of its principal office or place of doing business, and the type of entity (e.g., corporation, partnership, unincorporated association).

21. "Identify" when used with reference to a document means to state (a) the subject of the document; (b) the title of the document; (c) the type of document (e.g., letter, e-mail, memorandum, chart); (d) the date of the document, or if the specific date thereof is unknown,

the month and year or other best approximation of such date; (e) the identity of the person or persons who wrote, contributed to, prepared or originated such document; and, (f) the present or last known address of the custodian of the document.

22. The use of a verb in any tense shall be construed as the use of the verb in all other tenses, as necessary, to bring within the scope of this subpoena all documents and responses which might otherwise be considered to be beyond its scope.

## Instructions

1. Furnish all documents within your possession, custody or control, or within the possession, custody or control of your attorneys, investigators, agents, employees, and all other persons acting or purporting to act on your behalf.

2. Respond to each request for production of documents in full without abbreviation, expurgation or redaction. As to any request that cannot be responded to completely after reasonable efforts are made to secure the requested documents, so state, give the reason why a complete response cannot be made at this time, and provide as many documents responsive to the request as is possible.

3. This subpoena and accompanying document request is continuing in nature and, to the extent that your responses may be enlarged or otherwise modified by information acquired subsequent to the production of your initial responses hereto, you are required to promptly produce supplemental responses reflecting such changes.

4. Any document requested herein shall be produced as it is kept in the normal course. The name of the file from which it was produced, the identity of the person from whose file it was produced and the identity of the present custodian of that file shall each be set forth.

5. Any document that is attached by staple, clip or otherwise to a document requested herein shall also be produced (attached in the same manner as the original), regardless of whether the production of that document is otherwise requested herein.

6. In the event that any document or portion of any document within the scope of this subpoena is withheld from production upon a claim of privilege, work product or for any other reason, you are requested to furnish, with respect to each such document, the following: (i) a statement regarding the basis for any claim of privilege, work product or other forms of non-disclosure; and (ii) a sufficient description of the document, including (a) the title of the document and the nature and subject matter of its contents; (b) the date the document was prepared or any date appearing on the document; (c) the number of the document's pages, attachments and appendices; (d) the names of the persons who authored or prepared the document, and an identification by employment and title of each such person; and (e) the names of each person to whom the document, or a copy thereof, was sent, shown or made accessible, or to whom it was explained, together with an identification of each such person.

7. In the event that any document requested herein was formerly in your possession, custody or control and has been lost, destroyed or otherwise disposed of, you are requested to furnish a list identifying each such document and stating the following information with respect to each document: (i) the title of the document and the nature and subject matter of its contents; (ii) the identity(ies) of the person(s) who prepared or authored the document, and, if applicable, the person(s) to whom the document was sent or was intended to be sent; (iii) the date on which the document was prepared or transmitted; and (iv) the date on which the document was lost, destroyed or otherwise disposed of, the manner and conditions of and reasons for such

destruction or other disposition, and the person(s) requesting and performing the destruction or other disposition.

8. Each and every non-identical duplicate of a document within the scope of any request, whether different from the original because of stamps, indications of recipient, handwritten notes, marks, comments or attachment to different documents, or for any other reason, is a separate document to be produced in response hereto.

9. The period covered by these requests is from January 1900 to the present, except as otherwise specifically provided.

**Document Requests**

1. All documents concerning the handling, storage and/or disposal of waste and/or by-products associated with the operation of the Tank Farm.

2. All documents concerning any land in Tiverton and/or Fall River owned, leased, rented, used or at any time occupied by Shell during the relevant period.

3. All documents, including any permits or licenses, concerning construction and/or excavation at the Tank Farm, including but not limited to, the excavation and/or construction of any tank(s) at the Tank Farm and/or the expansion of the Tank Farm.

4. All documents, including any permits or licenses, concerning the demolition of any tank(s) or other structures at the Tank Farm.

5. All documents concerning the handling, disposal and/or distribution of soil or dirt from the Tank Farm.

6. All documents identifying any substances stored at any time in the tanks at the Tank Farm.

7. All documents between Shell or any of its predecessors and any entity that performed hauling, excavating and/or disposal services concerning the Tank Farm including, but not limited to, any contracts, bills of sale, service agreements, records of payment, etc.,.

8. All documents concerning any fires and/or explosions at the Tank Farm, including without limitation, the 1973 Fire.

9. All documents concerning the Hurricane of 1938 including, without limitation, documents concerning the hauling, disposal, storage and/or transportation of materials and debris, including waste materials, from the Tank Farm to any other location as a result of damage caused by the Hurricane of 1938.

10. All documents concerning Hurricane Carol including, without limitation, documents concerning the hauling, disposal, storage and/or transportation of materials and debris, including waste materials, from the Tank Farm to any other location as a result of damage caused by Hurricane Carol.

11. All documents concerning any property damage caused by the 1973 Fire including, without limitation, documents concerning the hauling, disposal, storage and/or transportation of materials and debris, including waste materials, from Shell to any other location as a result of damage caused by the 1973 Fire.

12. All documents, including, without limitation, any and all exposure studies, surveys, area and field studies, exposure monitoring reports, test results and/or sampling data concerning any environmental testing, environmental site assessment(s) or environmental due diligence investigations concerning the soil, water, air and/or structures at the Tank Farm and/or the surrounding properties, including the Bay Street Area.

13. All documents concerning any environmental testing or environmental site assessment(s) conducted by or relating to any response provided by Shell, or its predecessors or successors, to any inquiry made by the Environmental Protection Agency ("EPA"), the Rhode Island Department of Environmental Management ("RIDEM"), the Massachusetts Department of Environmental Protection ("MADEP") or any other local, state or federal agency, including, but not limited to, any response provided to the EPA pursuant to 42 U.S.C. Section 9604(e), or to any local or state regulatory agency pursuant to a state statutory or common law counterpart to 42 U.S.C. Section 9604(e).

14. All documents concerning any oil spills or the spill of any other substance on the Tank Farm or on the property adjoining the Tank Farm or in the Bay Street Area.

15. All documents concerning any spill, leak and/or seepage of oil or any other substance from any truck used, leased, contracted or subcontracted by Shell for the delivery or transport of oil or any other substance relating to the Tank Farm.

16. All documents concerning any spill, leak and/or seepage procedures in effect at the Tank Farm at any time during the relevant period.

17. All documents concerning the release, spill or leakage of any substance on the Tank Farm or on the property adjoining the Tank Farm or in the Bay Street Area, including, without limitation, any documents submitted to or prepared by EPA, RIDEM, MADEP or any other local, state or federal agency relating to the Tank Farm.

18. All documents concerning the contamination or potential contamination of any soil, waterway (including Mount Hope Bay), roadway, airway and/or property on or adjoining

the Tank Farm or in the Bay Street Area, submitted to or prepared by EPA, RIDEM, MADEP or any other local, state or federal agency relating to the Tank Farm.

19. All documents identifying the owner(s) of the property on which the Tank Farm is located (and any prior location of the Tank Farm) as well as documents identifying the owner(s) of any structures on the Tank Farm.

20. All documents concerning the ownership of the property on which the Tank Farm is located (and any prior location of the Tank Farm) as well as documents concerning the ownership of any fixtures on that property.

21. All documents concerning John Simpson, Jr., John K. Simpson, Alvin Simpson, or John Simpson, Inc., or any other hauling, carting, excavating, waste removal and/or hauling business owned and/or operated by such individuals or entities, their predecessors, affiliates, successors and/or assigns.

22. All documents concerning the easement that John Simpson, Jr., granted to Shell to construct the Pipeline.

23. All documents concerning the construction of the Pipeline including, without limitation, all contracts, invoices, bills of sale, service agreements and records of payment between Shell and any entity that performed construction, hauling, excavation and/or disposal services for Shell in connection with the Pipeline.

24. All documents between Shell and any entity that performed hauling, excavating and/or disposal services for Shell in connection with the operations conducted at the Tank Farm including, without limitation, all contracts, invoices, bills of sale, service agreements, records of payment.

25. All documents identifying any Service Station owned, leased, operated, franchised and/or managed by Shell and/or its predecessors or successors in Tiverton and/or Fall River.

26. All documents concerning the handling, storage and/or disposal of waste and/or by-products in connection with the operation of any Service Station identified in response to Document Request 25.

27. All documents, including any permits or licenses, concerning any construction, excavation and/or demolition at any Service Station identified in response to Document Request 25.

28. All documents identifying any oil, gasoline or other petroleum substance stored on the premises of any Service Station identified in response to Document Request 25.

29. All documents between Shell or any of its predecessors or successors and any entity that performed hauling, construction, excavation and/or disposal services at or for any Service Station identified in response to Document Request 25 including, but not limited to, any contracts, bills of sale, service agreements, records of payments.

30. All documents concerning any damage to any Service Station identified in response to Document Request 25 caused by the Hurricane of 1938.

31. All documents concerning the hauling, disposal, storage and/or transportation of materials and debris, including waste materials, from any Service Station identified in response to Document Request 25 to any other location as a result of damage caused by Hurricane of 1938.

32. All documents concerning any damage to any Service Station identified in response to Document Request 25 caused by Hurricane Carol of 1954.

33. All documents concerning the hauling, disposal, storage and/or transportation of materials and debris, including waste materials, from any Service Station identified in response to Document Request 25 to any other location as a result of damage caused by Hurricane Carol.

34. All documents identifying the owner(s), tenants, lessors, lessees, franchisors and/or franchisees of any Service Station identified in response to Document Request 25.

35. All documents concerning the Foamite provided by Shell to Tiverton's Fire Department for use in extinguishing the 1933 fire that caused damage to a tank farm located on the property abutting Mount Hope Bay that is west of Bay Street and north of Judson Street in Tiverton, Rhode Island.

*410003_1.doc*