# L

RHODE ISLAND
DEPARTMENT OF ENVIRONMENTAL MANAGEMENT
235 Promenade Street, Providence, RI 02908-5767 TDD 401-222-4462

**CERTIFIED MAIL**

September 14, 2006

RECEIVED
D.E.M./O.W.M.
2006 SEP 14 P 3:03

CT Corporation System
Registered Agent for Southern Union Company
10 Weybosset Street
Providence, RI 02903

RE: **Southern Union Company**
**OC&I/SR NO. 06-01**

Dear Sir or Madam:

Enclosed is a Notice of Violation issued to Southern Union Company. As is more fully set forth in this NOV, if you wish to request a formal hearing concerning this NOV, that request must be made in writing within twenty (20) days of receipt of this letter to the following:

Bonnie Stewart, Clerk, RIDEM Administrative Adjudication Division, 235 Promenade Street, Providence, RI 02908-5767

A copy of that request for a hearing should be sent to Attorney Brian Wagner at the Office of Legal Services, 235 Promenade St., Providence, RI 02908-5767.

You may request an informal meeting to resolve this matter. Correspondence, other than a request for a formal hearing on the NOV, including the request for an informal meeting, should be sent to the following address:

Tracey D'Amadio Tyrrell, RIDEM Office of Compliance and Inspection, Rm. 220, 235 Promenade Street, Providence, RI 02908-5767, Telephone: 222-1360 ext. 7407.

PLEASE BE ADVISED that correspondence with the Office of Compliance and Inspection, including requests to arrange an informal meeting to discuss this NOV, will not be deemed a request for a formal hearing and will not protect your right to request a formal hearing.

Sincerely,

Tracey D'Amadio Tyrrell

Tracey D'Amadio Tyrrell
Principal Environmental Scientist
Office of Compliance and Inspection

Cc. Brian Wagner, Office of Legal Services
Bonnie Stewart, Administrative Adjudication Division

30% post-consumer fiber

RHODE ISLAND
DEPARTMENT OF ENVIRONMENTAL MANAGEMENT
235 Promenade Street, Providence, RI 02908-5767 TDD 401-222-4462

**CERTIFIED MAIL**

September 14, 2006

Nancy L. Mello, Town Clerk
Town of Tiverton
343 Highland Road
Tiverton, RI 02878

RE: Southern Union Company
OC&I/SR No. 06-01

Dear Ms. Mello:

Enclosed please find the original of a Notice of Violation to be recorded in Land Evidence Records of Tiverton, RI. Please record this Notice of Violation and return it to this office. This document should include the book and page under which it is recorded. Thank you.

Sincerely,

Tracey D'Amadio Tyrrell

Tracey D'Amadio Tyrrell
Supervising Environmental Scientist
Office of Compliance and Inspection

Enclosure

30% post-consumer fiber

**STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS**
**DEPARTMENT OF ENVIRONMENTAL MANAGEMENT**
**OFFICE OF COMPLIANCE & INSPECTION**

**IN RE: SOUTHERN UNION COMPANY**
**d/b/a New England Gas Company**

**OC&I/SR File No. 06-01**

*Bay Street Neighborhood Study Area*
*Tiverton, Rhode Island*
*(OWM SR 2005-09; Case #2002-065(a))*

# NOTICE OF VIOLATION

## A. INTRODUCTION

Pursuant to *Sections 42-17.1-2(u) and 42-17.6-3 of the Rhode Island General Laws ("R.I.G.L."), as amended,* you are hereby notified that the Director of the Department of Environmental Management (the "Director" of "DEM") has reasonable grounds to believe that the above-named parties, Southern Union Company and the Town of Tiverton, Rhode Island (referred to as "Respondents") have violated certain statutes and/or administrative regulations under DEM's jurisdiction.

## B. FACTS

(1) Upon information and belief, Southern Union Company ("SUC"), is a Delaware business corporation having its principal offices in Houston, Texas, and is registered to do business in the State of Rhode Island.

(2) Upon information and belief, SUC is the owner of and/or successor-by-merger to the former Fall River Gas Company ("FRGC") and various properties and facilities associated with FRGC located on Charles Street in Fall River, Massachusetts.

(3) Upon information and belief, the Town of Tiverton ("Tiverton") is a municipal corporation of the State of Rhode Island, having offices located at 343 Highland Road, Tiverton, R.I. 02878.

(4) The properties that are the subject matter of this NOV are identified by DEM as the Bay Street Neighborhood Study Area ("BSNSA"), and are located in the northwestern corner of Tiverton. The BSNSA encompasses approximately 100 residential properties, several commercial properties and the abutting public roads and rights of way; otherwise identified as Tiverton Assessors Plats 8-6, Blocks 3, 5 (portion), 7(Lot 3,4) and 8; Plat 8-7, Blocks 13 (Lot 3), 14 (Lot 4,5), Blocks15, 16,17,21,22 and Block 41 (Lot 35) (the "Site").

(5) On August 26, 2002, DEM received a complaint alleging that contaminated soil was being dumped in a residential area at the end of Last Street in Tiverton and stockpiled on Bay Street as part of a sewer main installation (a/k/a the "Mount Hope Bay Sewer Interceptor project").

(6) On August 30, 2002, a DEM inspector responded to Last Street to investigate the complaint where he observed a pile of blue soil that had been dumped in the area. The inspector observed that the soil had a distinctive "blue" color that he associated with coal gasification waste material and observed a cyanide odor in the vicinity of the soil pile.

(7) A representative of the D'Ambra Construction Company informed the DEM inspector that the soil on Last Street had come from a sewer main project on Bay Street. The DEM inspector proceeded to Bay Street where he observed a stockpile of similar soil material and collected four soil samples for laboratory analysis.

(8) On September 6, 2002 DEM received analytical test results for the soil samples collected from Bay Street on August 30, 2002. Those results showed the presence of the following hazardous substances:

| | CONTAMINANT | R-DEC* | I/C-DEC* | SAMPLE RESULT | | | |
|---|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 | 4 |
| | Benzo(a)anthracene | 0.9 | 7.8 | | 607 | 1000 | 786 |
| | Benzo(a)pyrene | 0.4 | '0.8 | | | 638 | 832 |
| | Benzo(b)fluoranthane | 0.9 | 7.8 | 382 | 636 | 1510 | 977 |
| | Benzo(g,h,i)perylene | 0.8 | 10,000 | | | 1020 | |
| | Benzo(k)fluoranthene | 0.9 | 78 | | 689 | 2000 | 1370 |
| SVOC's | Chrysene | 0.4 | 780 | 463 | 755 | 1270 | 1040 |
| | Flouranthene | 20 | 10,000 | 876 | 1600 | 927 | 857 |
| | Indeno(1,2,3)Pyrene | 0.9 | 7.8 | | | 897 | 559 |
| | Phenanthrene | 40 | 10,000 | 463 | 951 | 597 | 569 |
| | Pyrene | 13 | 10,000 | 703 | 1710 | 1440 | 1870 |
| | Total Petroleum Hydrocarbons | 500 | 2,500 | 251 | 323 | 90.4 | 180 |
| | Cyanide | 200 | 10,000 | 22 | 17 | 96 | 52 |

***All concentrations reported in milligrams/kilogram (mg/kg), a/k/a parts-per-million (ppm).**

***R-DEC = DEM Residential Direct Exposure Criteria from Remediation Regulations.**

***I/C-DEC = DEM Industrial/Commercial Direct Exposure Criteria from Remediation Regulations.**

***Note: The method reporting limit (MRL) for SVOC's established by the lab was 378 mg/kg. If a SVOC was present below this concentration level it was not detectable. Thus, whenever a DEC is less than 378, undetected regulatory exceedances may be present in-between the DEC and the MRL.**

(9) The Semi-Volatile Organic Compounds (SVOCs) detected in the soil samples collected from Bay Street are known as Polycyclic Aromatic Hydrocarbons (PAHs), some of which are known or suspected human carcinogens and which are chemical compounds that result from the incomplete combustion of organic substances, including coal.

(10) On Sept. 30, 2002 DEM received a Notification of Release from EA Engineering on behalf of the Town of Tiverton and Starwood Tiverton, LLC identifying jurisdictional levels of SVOC contamination under the *Rules and Regulations for the Investigation and Remediation of Hazardous Material Releases* (the "Remediation Regulations").

(11) On October 8, 2002, DEM issued a Letter of Responsibility ("LOR") to Tiverton and Starwood Tiverton, LLC ("Starwood") requiring them to conduct a Site Investigation of the impacted areas on Bay Street and Last Street in Tiverton.

(12) On March 13, 2003, DEM received a report entitled *"Mount Hope Bay Sewer Interceptor Project, Site Investigation Report, Tiverton, Rhode Island,"* prepared by EA Engineering on behalf of Tiverton and Starwood and dated March 2003. The March 2003 SIR also included an Emergency/Short Term Action Report, dated December 2002.

(13) The March 2003 SIR indicates that:

(a) Soil samples collected on October 29 through November 1, 2002, contained the same SVOCs detected in the samples collected by DEM on September 6, 2002, at levels exceeding the R-DEC and/or I/C-DEC;

(b) Other SVOCs, including 2-Methylnaphthalene, Anthracene, Dibenzo(a,h)anthracene and Naphthalene were detected, as well as Total Cyanide, at levels exceeding the R-DEC and/or I/C-DEC;

(c) Soil boring logs documented the presence of coal pieces in the soil samples.

(14) Upon information and belief based on the physical observations and analytical results secured by DEM's inspector and the March 2003 SIR prepared by EA Engineering, the contamination discovered at the BSNSA is the result of the disposal of wastes generated during the production of manufactured gas, also known as coal gasification.

(15) On March 17, 2003, RIDEM issued a LOR identifying SUC as a responsible party for the release of hazardous materials in the BSNSA pursuant to Remediation Regulation § 3.60. SUC was identified as a responsible party based on its ownership of the former FRGC and its former manufactured gas plant ("MGP") facility located on Charles Street in Fall River, Massachusetts, less than one mile from the BSNSA.

(16) The March 2003 LOR directed requiring SUC to conduct a Site Investigation of the BSNSA and to submit a SIR to DEM pursuant to the Remediation Regulations.

(17) On October 23, 2003, DEM received a report entitled *"Site Investigation Report Addendum, Town of Tiverton, Tiverton, Rhode Island"* prepared by EA Engineering on behalf of Tiverton and dated October 2003. The October 2003 SIR documented the results of an investigation to determine the extent of soil contamination beneath the public roads/streets and right of ways.

(18) The October 2003 SIR indicates that:

(a) Soil samples collected on April 29 and 30, 2003 and July 28 and 29, 2003, contained the same SVOCs that were present in the samples collected by DEM and EA Engineering in 2002, several of which were at levels exceeding the R-DEC;

(b) Analyses for cyanide, volatile organic compounds (VOC's) and metals, added based on "concerns about historic filling operations along Bay Street by the Fall River Gas Company," resulted in the detection of Arsenic, Lead and Mercury in soil samples at levels exceeding the R-DEC;

(c) "Blue soil" was observed in the borings advanced for the collection of soil samples in the study area.

(19) On or about October 31, 2003, Vanesse Hagen and Brustlin Inc. ("VHB") submitted a SIR to DEM on behalf of SUC covering sixty-seven 67 properties in the BSNSA. The October 2003 VHB-SIR indicates that:

(a) Soil samples collected by VHB, contained the same SVOCs and inorganics detected in the samples collected by DEM on September 6, 2002 and by EA Engineering, at levels exceeding the R-DEC and/or I/C-DEC;

(b) TPH was detected at levels exceeding the R-DEC;

(c) Soil boring logs describe the observation of: dark colored soils, orange coloration, iron staining, gray colored soils, ash, coal and coal fragments, wood debris, low petroleum and chemicals odors, re-doximorphic soils and re-worked soils; and

(d) Further investigation was required (to determine the extent of the affected area).

(20) On or about June 9, 2004, DEM received a report from Ransom Environmental on behalf of Tiverton regarding a property located south of Judson Street in Tiverton. The Ransom Report indicates that during a site walk on February 28, 2004 with personnel from DEM, Ransom personnel observed material with coal-type characteristics at the ground surface near Judson Street.

(21) On or about July 19, 2004, SUC submitted a proposed Supplemental and Phase II SIWP to further investigate the 67 properties investigated in 2003, along with 17 (later expanded to 25) additional properties. The fieldwork for this Phase II SIWP was commenced by SUC in late August 2004.

(22) On July 30, 2004, DEM received a document entitled *"Immediate Response Action Plan"* prepared by ENSR International on behalf of SUC. The Plan states that ENSR "reviewed historical records of the former Fall River Gas Company to determine what information is available with respect to offsite disposal of Coal Gasification Related Materials (CGRM) in Massachusetts. Those records indicate that some of the material was sold as product, while other material was hauled offsite for disposal."

(23) SUC has refused to provide DEM with copies of the records reviewed by ENSR.

(24) On August 15, 2005, RIDEM received the Supplemental and Phase II SIR from SUC. The August SSIR indicates that:

(a) Soil samples collected by VHB, contained the same SVOCs and inorganics detected in the samples collected by DEM on September 6, 2002 and by EA Engineering, at levels exceeding the R-DEC and/or I/C-DEC;

(b) Additional contaminates including Antimony, Beryllium, Acenaphthene and 1,1 Biphenyl were detected at levels exceeding the R-DEC;

(c) Vanadium and TPH were detected in samples collected throughout the BSNSA.

(25) On November 23, 2005, DEM issued a Notice of Intent to Enforce ("NOIE") to SUC for failure to satisfy the following requirements of the March 2003 LOR:

(a) Submit a minimum of three (3) Remedial Alternatives for remediating all soil contaminated in the BSNSA to meet the Method 1 Residential Direct Exposure Criteria as outlined in the Remediation Regulations on or before January 4, 2006.

(b) Submit any outstanding site investigation sampling results and laboratory analysis, completed after the August 15, 2005 SIR by January 4, 2006.

(c) Conduct Public Notice to all residents of the BSNSA within 14 days of receipt of DEM's Program Letter.

(26) Via a separate letter, dated November 23, 2005, DEM notified SUC that its proposal to develop "Method 3 remedial objectives" would not be approved because SUC could not properly demonstrate that it possessed the necessary control over the full area impacted by the R-DEC accidences to implement such Method 3 remedial objectives.

(27) As of the date of this Notice, Respondent has failed to comply with the requirements of the NOIE dated November 23, 2005 by failing to submit a SIR with three remedial alternatives to the DEM.

C. VIOLATION

Based on the foregoing facts, the Director has reasonable grounds to believe that Respondent has violated the following statutes and regulations:

(1) **R.I. General Laws § 23-19.14-6**, imposing strict, joint and several liability for any actual or threatened release of any hazardous material on the responsible parties defined therein.

(2) **Remediation Regulation 4.02**, requiring that a responsible party that is notified of the presence of hazardous materials originating from its operations or property to initiate investigations and other actions in accordance with §§ 5.00 – 12.00 of the Remediation Regulations.

(3) **Remediation Regulation 7.00**, authorizing the Director to order a performing (responsible) party to perform an investigation of a contaminated site in accordance with the requirements of that Section, including but not limited to the requirement to prepare a Site Investigation Report that includes a minimum of two (2) remedial alternatives (other than a no action/natural attenuation alternative) to remediate a release identified in a Site Investigation.

D. ORDER

Based upon the violations alleged above and pursuant to *R.I.G.L. §42-17.1-2(u)*, you are hereby **ORDERED** to:

(1) **Within thirty (30) days** of receipt of this NOV, submit to the DEM – Office of Waste Management a complete SIR containing a minimum of three (3) Remedial Alternatives for remediating all soil contamination in the BSNSA to meet RIDEM's Method 1 Residential Direct Exposure Criteria as outlined in the Remediation Regulations 7.03, 7.04, 7.05, 7.08 and 8.00.

(2) **Within thirty (30) days** of receipt of this NOV, submit any and all outstanding site investigation sampling results and laboratory analysis, completed after the August 15, 2005 SIR submittal, for the remaining properties in the BSNSA.

(3) **Within thirty (30) days** of receipt of a Program Letter issued by DEM, Respondent shall conduct Public Notice to all residents of the BSNSA in accordance with the requirements of Remediation Regulation 7.07 B.

(4) **Within ninety (90) days** of receipt of a Remedial Decision Letter issued by DEM, Respondent shall submit to DEM a Remedial Action Work Plan in accordance with the requirements of Remediation Regulation 9.00.

(5) **Within thirty (30) days** of receipt of an Order of Approval issued by the DEM pursuant to Remediation Regulation 10.00, Respondent shall initiate the Remedial Action in accordance with all of the requirements of the Order of Approval and Remediation Regulation 11.00.

E. ASSESSMENT OF PENALTY

(1) Pursuant to *R.I.G.L. §§42-17.6-2 and 42-17.6-7*, an administrative penalty of One Thousand Dollars ($1,000) per day, as more specifically described in the attached penalty summary and work sheets, is hereby **ASSESSED**, jointly and severally, against each named respondent.

(2) Each and every occurrence and/or day during which a violation or failure to comply is repeated constitutes a separate and distinct violation. Accordingly, the penalty assessed herein shall continue to accrue at the specified rate until such time as the respondent(s) comply with Paragraphs D(1) and D(2), above, as originally required in the NOIE issued to SUC. As of the date of issuance of this NOV, the total penalty accrued and outstanding is:

**Two Hundred Fifty-three Thousand Dollars = $253,000.00**

(3) The proposed administrative penalty is calculated pursuant to the *Rules and Regulations for Assessment of Administrative Penalties*, as amended, and must be paid to the Director within 20 days of your receipt of this NOV. Payment shall be in the form of a certified check or money order made payable to the "Rhode Island General Treasury – Water and Air Protection Program Account". The payment shall be forwarded to the DEM - Office of Management Services, 235 Promenade Street, Suite 340, Providence, RI 02908-5767, along with a copy of this NOV.

(4) If any violation alleged herein shall continue, then each day during which the violation occurs or continues shall constitute a separate offense and the penalties and/or costs for that violation shall continue to accrue in the manner set forth in the attached penalty summary and work sheets. The accrual of additional penalties and costs shall be suspended if the Director determines that reasonable efforts have been made to comply promptly with this NOV.

F. RIGHT TO ADMINISTRATIVE HEARING

(1) Pursuant to *R.I.G.L. §§42-17.1-2(u)(1), 42-17.6-4 and Chapter 42-35,* each named respondent is entitled to request a hearing before the Director or his/her designee regarding the allegations, orders and/or penalties set forth in Paragraphs B through E, above. **All requests for hearing MUST:**

(a) Be in writing. *See R.I.G.L. §§42-17.1-2(u)(1) and 42-17.6-4(a);*

(b) Be **RECEIVED** by DEM's Administrative Adjudication Division within twenty (20) days of your receipt of this NOV. *See R.I.G.L. §§42-17.1-2(u)(1), 42-17.1-2(u)(3), 42-17.6-4(a) and 42-17.7-9;*

(c) Indicate whether you deny the alleged violations and/or whether you believe that the administrative penalty is excessive. *See R.I.G.L. §42-17.6-4;* AND

(d) State clearly and concisely the specific issues that are in dispute, the facts in support thereof, and the relief sought or involved, if any. *See Rule 7.00(b) of the Administrative Rules of Practice and Procedure for the Administrative Adjudication Division of Environmental Matters.*

(2) All written requests for hearing must be forwarded to:

Chief Hearing Officer
DEM - Administrative Adjudication Division
235 Promenade Street, Room 310
Providence, RI 02908-5767

(3) A copy of each request for hearing must also be forwarded to:

DEM - Office of Legal Services
235 Promenade Street, Room 425
Providence, RI 02908-5767

(4) Each named respondent has the right to be represented by legal counsel at all administrative proceedings relating to this matter.

(5) If any respondent fails to request a hearing in the above-described time or manner with regard to any violation set forth herein, then this NOV shall automatically become a Final Compliance Order enforceable in Superior Court as to that respondent and/or violation and any associated administrative penalty proposed in the NOV shall be final as to that respondent. *See R.I.G.L. §§42-17.1-2(u)(5) and 42-17.6-4(b).*

(6) Failure to comply with this NOV may subject each respondent to additional civil and/or criminal penalties.

(7) An original signed copy of this NOV is being forwarded to the Town of Tiverton, RI wherein the Property is located, to be recorded in the Office of Land Evidence Records pursuant to *R.I.G.L. Chapter 34-13 and §42-17.1-2 (ee)*, as amended.

(8) This NOV does not preclude the Director from taking any additional enforcement action nor does it preclude any other local, state, or federal governmental entities from initiating enforcement actions based on the acts or omissions described herein.

If you have any questions concerning this NOV, please contact Tracey D'Amadio Tyrrell of the DEM - Office of Compliance and Inspection at (401) 222-1360, ext. 7407.

FOR THE DIRECTOR,

Dean H. Albro

Dean H. Albro, Chief
DEM - Office of Compliance & Inspection

Date: September 14, 2006

**CERTIFICATION**

I hereby certify that on the 14th day of September, 2006, the within NOV was forwarded via Certified Mail, return receipt requested, to:

CT Corporation System
Registered Agent for Southern Union Co.
10 Weybosset Street
Providence, RI 02903

Louisa M. Zanfelli

# PENALTY SUMMARY

*Program: Office of Compliance and Inspection*
*File Number: OC&I/SR No. 06-01*

| GRAVITY OF VIOLATION SEE "PENALTY MATRIX WORK SHEETS" ATTACHED. | | | | | |
|---|---|---|---|---|---|
| VIOLATION | APPLICATION OF MATRIX | | PENALTY CALCULATION | | AMOUNT |
| | Type | Deviation | Penalty from Matrix | No. or Duration of Violations or Other Multiplier | |
| C(1), (2) & (3) §§ *RIGL §23-19.14-8* and Remediation Regulations 4.02 & 7.00 | Type I *($1,000 Max. Penalty)** | Major | $1,000 per day | Respondent has failed to submit a final SIR meeting the requirements of Rule 7.00 and other required information since January 4, 2006. This violation/penalty continues to accrue. | $253,000 |
| SUB-TOTAL | | | | | $253,000 And Accruing |

* **Maximum Penalties represent the maximum penalty amounts per-day, per-violation.**

**TOTAL PENALTY PROPOSED UNDER PENALTY REGULATIONS = $253,000.00 and accruing**

## *PENALTY MATRIX WORK SHEET*

*Citation: R.I.G.L. § 23-19.14-6 and Remediation Regulations 4.02 & 7.00*
*Violation Numbers: C(1), (2) & (3)*

| TYPE | | |
|---|---|---|
| **TYPE I**<br>*DIRECTLY* related to the protection of the public health, safety, welfare or the environment | | |

**DEVIATION FROM THE STANDARD**
THE DEGREE TO WHICH A PARTICULAR VIOLATION IS OUT OF COMPLIANCE WITH THE REQUIREMENT ALLEGEDLY VIOLATED.

**FACTORS CONSIDERED,** in accordance with Section 10(a)(2) of the Rules and Regulations For Assessment of Administrative Penalties:

(a) **The extent to which the act or failure to act was out of compliance:** DEM conducted an inspection on August 30, 2002 of Bay Street and Last Street in Tiverton, RI in response to a complaint. During the inspection DEM personnel collected samples of soil material from a recently excavated soil stockpile located on Bay Street. Analysis of the samples revealed the presence of SVOCs, more specifically PAHs, TPH and total Cyanide at concentrations exceeding the Direct Exposure Criteria contained in the Remediation Regulations. Subsequent investigations conducted by EA Engineering on behalf of the Town of Tiverton revealed that soil contamination discovered on August 30, 2002 was wide spread existing beneath the road/street areas of the BSNSA and extending onto abutting private properties. The EA investigation also identified the presence of Total Petroleum Hydrocarbons (TPH), Semi-Volatile Organic Compounds (SVOCs), total metals including Lead and Arsenic as well as total Cyanide. Upon information and belief, contaminated soils remain on the Site. On March 17, 2003, RIDEM issued a Letter of Responsibility ("LOR") to Respondent stating that the Respondent was a responsible party for the release of hazardous materials in the BSNSA. On November 23, 2005, DEM issued a Notice of Intent to Enforce (NOIE) to Respondent for failure to provide a SIR with three (3) remedial alternatives as required in the LOR dated March 17, 2003. The NOIE specified a deadline of January 4, 2006, for Respondent's compliance. As of the date of this Notice Respondent has failed to comply with the requirements of the LOR and NOIE issued by the DEM on March 17, 2003 and November 23, 2005, respectively. Specifically, Respondent's failure to provide a SIR with three (3) remedial alternatives jeopardizes the timely clean up and remediation of the soil contamination identified in the BSNSA.

(b) **Environmental conditions:** Since the dumping of Respondent's waste materials occurred, the BSNSA has been developed with public right-of-ways and approximately 100 residential properties resulting in high potential for direct human exposure to the contaminated soils. In addition, the groundwater within the BSNSA is classified GA, which indicates groundwater resources that are considered suitable for public drinking water use without treatment.

(c) **The amount of the pollutant:** The full extent and amount of contaminated material at this time is unknown, however contamination at least extends over the area revealed by the subsurface investigation beneath the portions of the public roads/streets inclusive of Bay, Judson, Hooper, Hilton, Canonicus, Chase, Foote as far north as State Avenue and onto multiple residential properties.

(d) **The toxicity or nature of the pollutant:** Arsenic and lead are toxic heavy metals, which have numerous detrimental health effects on humans. Arsenic is a carcinogen. Certain SVOCs are potentially harmful to human health and the environment. All of these pollutants are potential threats to groundwater quality at the site, although no actual impacts to groundwater quality have been documented at this time.

(e) **The duration of the violation:** On November 23, 2005 DEM issued a NOIE to Respondent for failure to provide a SIR with three (3) remedial alternatives. DEM required the Respondent to submit a complete SIR containing three (3) remedial alternatives to the DEM on or before January 4, 2006. Respondent has failed to submit the required information to DEM. As of the date of this Notice, Respondent's violation is ongoing as Respondent continues to fail/refuse to comply with the requirements of the NOIE and the Remediation Regulations.

(g) **Whether the person took reasonable and appropriate steps to prevent and/or mitigate the non-compliance:** Although Respondent performed substantial site investigation work at the BSNSA, Respondent refused to respond to DEM questions and comments regarding the findings of the site investigation and halted all site work and all cooperation with DEM when it came time for Respondent to design and implement response actions based on the findings of its site investigation work. Respondent has failed to submit, and continues to refuse to submit, a compliant SIR identifying three (3) remedial alternatives to mitigate the contamination at the Site in the SIR as required by the Remediation Regulations.

(h) **Whether the person has previously failed to comply with any regulations, order, statute, license, permit or approval issued or adopted by the Department, or any law which the Department has the authority or responsibility to enforce:** Respondent has failed to comply with the LOR issued by DEM on March 17, 2003 and the NOIE issued by DEM on November 23, 2005 both actions requiring the Respondent to submit a complete SIR containing three (3) remedial alternatives for the remediation of the release in the BSNSA.

(i) **The degree of willfulness or negligence, including but not limited to, how much control the violator had over the occurrence of the violation and whether the violation was foreseeable:** Respondent has been notified by DEM of the requirement to submit a complete SIR with remedial alternatives and has complete control over the violation.

| Penalty Matrix for Violations of Rhode Island General Laws as amended and Rules, Regulations, Permits, Licenses, and Orders adopted thereunder where the applicable statute provides for a civil penalty up to $1,000.00. | | TYPE I | TYPE II | TYPE III |
|---|---|---|---|---|
| DEVIATION FROM STANDARD | MAJOR | $800 -to- $1,000 **$1,000** | $600 -to- $800 | $400 -to- $600 |
| | MODERATE | $600 -to- $800 | $400 -to- $600 | $200 -to- $400 |
| | MINOR | $400 -to- $600 | $200 -to- $400 | $100 -to- $200 |