UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL, JOHN D. and JOHN F. CORVELLO, et al., )<br>Plaintiffs, )<br>vs. )<br>NEW ENGLAND GAS COMPANY, )<br>Defendant/Third Party Plaintiff )<br>vs. )<br>BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC, et al., )<br>Third-Party Defendants. ) | C.A. No. 05-0221T<br>(Related Cases: 05-274T; 05-370T; 05-522T) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR TRIAL PLAN INVOLVING A REPRESENTATIVE SUBSET OF PLAINTIFFS**

INTRODUCTION

The plaintiffs in the above-captioned matter submit this Memorandum of Law in support of its Motion for Trial Plan Involving a Representative Subset of Plaintiffs. Plaintiffs request that the Court order the parties to confer and select a representative subset from the nearly 130 individual property owners and residents involving 85 properties for the purpose of trying this case in a manner that will further the interests of justice and judicial economy. Plaintiffs essentially proposed this process to Defendant Southern Union by correspondence on October 17, 2007, attached hereto as Exhibit "A", and again raised the issue at the November 16, 2007 discovery conference before

Magistrate Judge Lincoln Almond. The parties are now engaged in substantive discovery. Defendant served its written discovery on all plaintiffs on November 5, 2007, and now seek to take deposition testimony of all 129 plaintiffs.

For the reasons set forth below, Plaintiffs respectfully submit that the relatively short time remaining before the close of discovery on February 29, 2008 would be better used if the parties, at the Court's direction, focused discovery on a representative subset of the 129 plaintiffs, with a view toward trying this case on the claims advanced by this subset of plaintiffs. Plaintiffs submit that such an approach furthers the interest of justice and judicial economy. Plaintiffs submit that the alternative of trying this case with testimony and evidence from all 129 plaintiffs at one time would be impractical and unwieldy.

ARGUMENT

Fed.R.Civ.P. 42(b) provides that

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Selection of a subset of representative plaintiffs to test the issues in this case will further the convenience of all parties and the Court and will serve the interests of expedition and economy contemplated by Rule 42(b).

"The decision to separate parties or claims is a case management determination 'peculiarly within the discretion of the trial court.'" *Acevado-Garcia* v. *Monroig*, 351 F.3d 547, 558 (1st Cir. 2003)(affirming that a separate trial of 20 of 82 plaintiffs "was a

legitimate and feasible means of efficiently conducting [an] unwieldy litigation.") (citing *Gonzalez-Marin* v. *Equitable Life Assurance Soc.* 845 F.2d 1140, 1145 (1st Cir. 1998).[1]

In reaching its decision, the district court considered

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present common questions of law and facts; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if the trials were severed and heard by separate juries; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Acevado-Garcia* v. *Monroig*, 204 F.R.D. 26, 30 (Dist. P.R. 2001). The district court emphasized its belief "that one jury will never be able to absorb evidence, testimony or documentary proof pertaining to 82 Plaintiffs in such a manner as to render a fair and impartial verdict at the end of trial." *Id.* These factors apply equally to the case at bar and support the Plaintiffs' motion to conduct a trial with a representative subset of property owners.

This is a consolidated case involving some 129 individual property owners and/or residents from Tiverton, Rhode Island. As alleged in the Amended Complaint, Defendant Southern Union, by the acts and omissions of its predecessor Fall River Gas Company, wrongfully permitted the disposal of its coal gasification waste in and about certain lands in Tiverton upon which the Plaintiffs' homes are now built. The waste was discovered by the Town of Tiverton in 2002, which imposed a moratorium in 2003 significantly restricting the Plaintiffs' use of their properties. Plaintiffs have endured over 5 years under the moratorium with no end in sight. Plaintiffs further allege that the

---

1 "[C]ourts of appeals accord broad latitude to district courts in this area." *Id.* citing *Gonzalez-Marin* v. *Equitable Life Assurance Soc.* 845 F.2d at 1145; *Appelwhite* v. *Reichold Chems., Inc.*, 67 F.3d 571, 574 (5th Cir. 1995); *New York* v. *Hendrickson Bros. Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988).

moratorium, and the presence of Defendant's waste on or near their properties has caused injury to their properties and has caused them emotional distress.

The Court conducted a status conference in this case in November, 2006, at which time the Court authorized the parties to conduct substantive discovery. The Court initially ordered that such discovery be completed by November 11, 2007. On November 5, 2007, Defendant served all 129 property owners with written discovery. Prior to the service of this discovery, the Plaintiffs sent Defendant the correspondence attached hereto as Exhibit "A" observing that "the size and complexity of he case raises some challenging questions as to how the case can be fairly and efficiently tried." Although the parties had an initial discussion about this proposal, the issue has not moved forward. Instead, on November 5, 2007, Defendant served all plaintiffs with interrogatories, requests for documents and indicated its intention to conduct depositions of all property owners. Those depositions began on December 4, 2007 and if all 129 are conducted it will take up the better part of the remaining time allotted to complete discovery.

As in *Acevado-Garcia* v. *Monroig*, there are aspects of this case that make a trial of a representative subset a sensible use of the Court's time and the parties' resources. Every plaintiff lives within the moratorium area and is subject to the moratorium restrictions. This is the case regardless of the nature and extent of contaminants, if any, on any particular property. Therefore, if there were a determination that Defendant wrongfully permitted the disposal of its coal gasification waste in Tiverton, resulting in the imposition of the moratorium, that finding would be common and applicable to all property owners. While the nature and extent of contaminants, if any, on individual properties could augment or diminish the measure of damages, a fair selection of

properties that represent the range of contamination (i.e. from none to extensive) would provide the Court and parties with a range of potential damages upon which the resolution of claims of properties not in the subset can be obtained.

Plaintiffs submit that a simultaneous trial of all the property owners would be very impractical, unwieldy and time consuming. Moreover, liability and damage testimony from each of the individual property owners would be extremely duplicative and not conducive to the interests of justice and judicial economy. It will be asking a jury a great deal to deliberate on 129 separate determinations of liability and damages. Given that scenario, Plaintiffs suggest that each side select a representative subset of four property owners that would be reflective of the range of potential damages sought in the Amended Complaint. This is precisely the method approved by the First Circuit in *Acevado-Garcia* v. *Monroig,* 351 F.3d at 554. As proposed in Exhibit "A", all plaintiffs will respond to Defendant's written discovery from which Defendant will have a basis to select representative property owners for trial. Plaintiffs will make their selection. Full discovery, including depositions, would be conducted of the subset. A trial of these representative properties could be used to resolve the issue of liability and, if plaintiffs obtain a verdict, could be used to establish a range of damages from which a fair disposition of the remaining claims could be obtained.

CONCLUSION

Plaintiffs respectfully request that the Court grant its Motion ordering the parties to engage in written discovery and targeted set of depositions to enable the parties to select representative plaintiffs, and then order a trial of the claims of the representative subset on all issues.

By their Attorneys,

/s/Mark W. Roberts
Mark W. Roberts
**McROBERTS, ROBERTS AND RAINER, LLP**
53 State Street
Boston, MA 02109
(617)-722-8222

Neil T. Leifer
David C. Strouss
Brad J. Mitchell
Christian F. Uehlein
**THORNTON & NAUMES, LLP**
100 Summer Street, 30th Floor
Boston, MA 02110
(617) 720-1333

Robert J. McConnell (#3888)
Jonathan D. Orent (#7408)
**MOTLEY RICE, LLC**
321 South Main Street
Providence, RI 02940
(401) 457-7700

Date: ____________________

Exhibit A

ATTORNEYS AT LAW

Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris (NY & MA)
Edwin L. Wallace
Robert M. Byrne, Jr. (NY & MA)
David C. Strouss
Joseph R. Donohue (ME & MA)

Andrew S. Wainwright (NY & MA)
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley (NY & MA)
Brad J. Mitchell
Kristen Marquis Fritz
Zoran Malesevic
Robert T. Naumes, Jr. (CT & MA)
Andrea C. Marino
Christian F. Uehlein

Of Counsel
Elizabeth M. Shost
Admitted in NY & PA only

October 17, 2007

John A. Tarantino, Esq.
Adler Pollock & Sheehan P.C.
1 Citizens Plaza, 8th Floor
Providence, RI 02903

David E. Ross, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019

Re: *Corvello, et al v. Southern Union*

Gentleman:

I am writing to propose that we confer in the next week or two about how this case should be tried. As you know, there are more than 100 plaintiffs seeking damages from Southern Union for diminution of their property values, interference with their use of their properties and mental suffering from the presence of the contaminants and the resulting restrictions on use of the properties. The size and complexity of the case raises some challenging questions as to how the case can be fairly and efficiently tried. I believe that it is incumbent on counsel to meet and confer about this issue and I expect that the Court would appreciate any efforts on our behalf to enable the Court to preside over the case in a pragmatic and efficient manner.

We have given much thought to these issues and ask you to consider the following proposal. We suggest that the trial of the case be conducted with a small number of property owners whose situations are representative of the range of alleged damages at issue in the case. For purposes of this proposal, we are assuming that not all the families have sustained the same degree of property value diminution, property interference and mental suffering. Some have suffered more and some have suffered less. Thus, if liability and causation were established at trial, the damages for each family would not necessarily the same.

We propose that the Court conduct trial to determine liability, causation and damages for a small number of families (perhaps 8), half of whom will be selected by Southern Union and half selected by plaintiffs' counsel. The goal should be to select a small number of families whose alleged injuries represent the lower end and higher end of potential damages. We propose that a trial involving those families test all issues, including damages, so that the outcome of that trial can enable the parties to resolve the claims of the other families. Our proposal does not require or anticipate that Southern Union would be unable to interpose any defense or theory that it would otherwise raise if the trial involved all 100 plus plaintiffs. Rather, this proposal is simply intended to provide the Court with a feasible mechanism to fairly and efficiently try the issues.

I realize that Southern Union's ability to select families requires that it have family specific information. This will undoubtedly require some discovery. To that end, it was my understanding that Southern Union had planned to file written discovery on October 4, 2007. To date, we have received nothing. Notwithstanding, we have begun proposing dates when our clients will be available for deposition. You should have received those dates by the time you receive this letter. Through written discovery and a targeted number of depositions, it should be possible for you to select representative Plaintiffs.

We are available this week and next week to discuss our proposal. I am suggesting this schedule because I expect that we will be before the Court in mid- to late November in connection with the motion to sever the recently joined third party defendants and it is our goal to raise this issue with the Court at that hearing. Thus, if we are unable to reach an agreement about the conduct of trial, we would move our proposal for the Court's consideration, in which case you will have time to file any memorandum in opposition. I am hopeful that this will not be necessary and that we can make a joint proposal to the Court.

Thank you in advance for your cooperation.

Sincerely,

Neil T. Leifer

NTL/mk
cc: All Counsel of Record