# EXHIBIT 1

by the Plaintiffs' experts or agents?

MR. ROBERTS: The Plaintiffs' experts and agents have done sufficient investigation of the properties within the moratorium area to be able to establish, from our perspective, that there is coal gasification waste and where it's distributed through the tested properties.

There are a number of properties that are not tested, and the costs to properly test those properties is well in excess of $1 million. And given how the environmental statutes are structured, that's a cost appropriately borne by New England Gas, and which is why we are seeking an abatement because abatement is two things, it's one-- there are probably properties within the moratorium area that have no contamination, but until there's a proper investigation of those properties done, they can't get out of the moratorium.

And then there-- from there, there's a variation of how contaminated to imminent hazard conditions, which have been documented.

THE COURT: Well, there are two separate theories of damages here. One is that-- and I understand both of them. One is that the moratorium, the mere existence of the moratorium has damaged all of the Plaintiffs.

Now, New England Gas has indicated that it contests that theory, that, as I understand it, its position is that,

unless an individual property, an individual Plaintiff's property has been contaminated, New England Gas is not responsible for the imposition of the moratorium, which I don't know exactly what their argument is, but maybe-- they may be contending that the Town acted precipitously in imposing a moratorium that extensive and they can't be responsible for that. Now, that's a question largely of law that has not yet been resolved.

But what I'm trying to get at is how many-- the other theory is that some of the Plaintiffs may be able to show that their property actually has been contaminated.

So whether New England Gas succeeds in their argument that they can't be responsible for the consequences of the moratorium, the Plaintiffs whose property has actually been contaminated, nevertheless, would have a right to recover from New England Gas.

And I'm trying to identify how many Plaintiffs fall in to each of those categories.

MR. ROBERTS: And, Your Honor, I can't give you the exact numbers, but in virtually every Plaintiff's property that's been investigated, there is evidence of coal gasification waste, either through the presence of materials such as clinkers, coal dust or actual testing data to-- that shows cyanide, blue soil, the presence of PAHs, the presence of coal tar.

MR. ZABBO: I know that test pits were dug on the Reis property. I believe that soil samples were also taken from the Souza property and Trecida property. Those would be the three properties whose families I represent. So I believe all three have had some form of testing, although to different extents.

THE COURT: And is there evidence that coal gasification waste was found on all of the Reis Plaintiffs' properties?

MR. ZABBO: There is, Your Honor.

THE COURT: All right. But you've only tested three, so there are only three properties in which you know whether there are hazardous substances present?

MR. ZABBO: I only represent the families of three properties, and all three properties have been tested, I believe by DEM.

THE COURT: You only represent three of the Reis families?

MR. ZABBO: I represent the Reis family, the Trecida family and the Souza family. Those are the Plaintiffs in my action. Their children are also named Plaintiffs in the case, not as property owners, but asserting the injury claims.

THE COURT: All right. So there are three properties with 17 people is what you're saying?