**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| GAIL, JOHN D. AND JOHN F. CORVELLO, et al., *Plaintiffs,* v. NEW ENGLAND GAS COMPANY, INC., *Defendant and Third-Party Plaintiff,* v. BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC; BRIDGESTONE AMERICAN HOLDINGS, INC.; HONEYWELL INTERNATIONAL, INC.; TOWN OF TIVERTON; GULF OIL CORPORATION; INLAND FUEL TERMINALS, INC.; DOMINION RESOURCES, INC.; DOMINION ENERGY BRAYTON POINT LLC, and THE CITY OF FALL RIVER *Third-Party Defendants.* | C.A. No. 05-221T (Consolidated case nos: 05-274T, 05- 370T, 05-522T) |

PLAINTIFFS' RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE ON WHY TRIAL SHOULD NOT BE BIFURCATED WITH DAMAGES AND OTHER RELIEF DETERMINED IN A SUBSEQUENT PHASE

I. Introduction

On January 9, 2008, the Court issued an Order to show cause "why the plaintiffs' claims for damages and other relief should not be tried separately and why they should not be tried together with NEGCo's [New England Gas Company's] third party claims." Memorandum and Order at 12. Plaintiffs agree that bifurcation generally along the lines suggested by the Court at the January 3, 2007 conference of counsel will promote the interests of justice and judicial economy. At the January 16, 2008 hearing on Plaintiffs' Motion for a Trial Plan Involving a Representative Subset of Plaintiffs, the Court suggested four (4) questions that might be

answered by a jury in the first trial.[1] Plaintiffs submit that Questions (1) through (3) will effectively determine the issue of NEGCo's liability, but that Question (4) is not necessary to determine liability and need not be considered by the jury in this phase. This question is more germane to the issues of causation and damages. If considered during the liability phase, it would require the jury to make 130 separate determinations, thus undermining the advantages of bifurcation under Fed.R.Civ.P. 42(b). For the reasons set forth below, Plaintiffs submit that the Court should proceed with bifurcation and have the jury in the first phase answer Questions (1) through (3).

## II. Argument

This is a consolidation of four separate civil actions brought by more than 130 residents in the Bay Street neighborhood of Tiverton, Rhode Island, for damages which they claim from the wrongful disposal of coal gasification waste in their town by the defendant NEGCo. Plaintiffs claim that the presence of this waste in their town resulted in the imposition of a moratorium severely restricting the use of their properties. This moratorium, as well as the presence of this waste on their individual properties, has diminished the value of their homes, interfered with their use and enjoyment of their homes and has caused them emotional distress.

---

[1] THE COURT: "One question is, have any coal gasification wastes containing hazardous substances been deposited on or near the Plaintiffs' properties?"

"The second question that would have to be addressed is, if coal gasification wastes have been deposited in the vicinity, is New England Gas responsible for those wastes having been deposited there?"

"The third question is: Have these wastes, assuming that the jury finds that, yes, there were coal gasification wastes deposited and, yes, New England Gas is responsible, have these wastes caused or contributed to the imposition of the moratorium?"

"The fourth question, and this is where it gets a little more difficult, is: Assuming that the jury gets that far, have those wastes caused or contributed to the presence of any hazardous substances on any of the Plaintiffs' properties?" Trans. at 33:3-7. The court further noted: "Now, I think it's necessary at phase one to determine which of the plaintiffs' properties have been contaminated in order to determine at the next phase what damages a plaintiff may have sustained as a result of contamination."

NEGCo has denied all of these allegations. NEGCo has joined numerous third party defendants alleging that they caused or contributed to the waste present on the plaintiffs' properties. Plaintiffs have asserted no claims against the third party defendants.

Plaintiffs believe that a determination of NEGCo's liability to all Plaintiffs can and should be determined in the first phase and support this approach by the Court.

A. Bifurcation is a Sensible Way to Try this Case.

There is ample authority for the Court's decision to bifurcate the trial and to first try the issue of NEGCo's liability. "Fed.R.Civ.P. 42(b) permits a trial court, 'in furtherance of convenience or to avoid prejudice … [to] order a separate trial of any claim … or issue,' and a decision to utilize this procedure is viewed deferentially." *Blyden* v. *Mancusi*, 186 F.3d 252, 286 (2nd Cir. 1999) *citing Vichare* v. *AMBAC Inc.*, 106 F.3d 457, 466 (2nd Cir. 1996). The First Circuit also affords a trial court broad discretion in this area. *Acevedo-Garcia* v.*Monroig*, 351 F. 3d 547 (1st Cir. 2003).

In its January 9, 2008 Memorandum and Order, the Court identified simplification of issues, avoidance of confusion, expedition and the avoidance of prejudice as considerations for its decision to bifurcate the trial of this case and to try first the issue of NEGCo's liability. See, Memorandum and Order at 5-9. Each of these considerations weighs in favor of bifurcation. Since the issue of NEGCo's liability can be determined for each of the Plaintiffs, Plaintiffs also agree that factors (such as duplication of evidence) that militate against bifurcation are minimal and not sufficient to make bifurcation impractical or inapplicable.

B. Bifurcation of Liability Will Not Violate The Seventh Amendment.

When a trial court is considering bifurcation of issues, the Seventh Amendment right to trial by jury must be kept in mind. The Seventh Amendment does not require that the same jury

decide all issues in a case, but it does require that a given issue not be tried by different, successive juries. In re *WorldCom, Inc. Securities Litigation*, 2005 WL 375315 (S.D.N.Y. 2005). If a case is bifurcated for trial and the jury in the first trial determines the issue of liability, then that issue must not be re-determined by a successive jury in a later phase. *See, e.g. Blyden* v. *Mancusi*, 186 F.3d 252 (2nd Cir. 1999). *Blyden* involved civil actions against prison guards by prisoners following the riots at Attica Prison in 1971. Following bifurcation, the first jury was asked to determine the guards' liability and then a second jury was asked to determine damages. Because the each prisoner was alleging specific acts against him, the second jury had to determine whether a particular guard's acts against that prisoner amounted to unlawful conduct. The Second Circuit found that this violated the Seventh Amendment because successive juries were asked to determine liability. In *Blyden*, there was no common issue of liability.

The case at bar is distinguishable from the problem presented in *Blyden.* The issue of liability is common to all Plaintiffs. All of the properties in question are located within the Bay Street neighborhood and all Plaintiffs have had to endure a use moratorium which was allegedly imposed following the discovery of the waste within that area of Tiverton. The issue in this case is whether the wrongful acts or omissions of NEGCo resulted in the disposal of coal gasification waste in this neighborhood. If it did not, then the case is over. If it did, then each plaintiff from that neighborhood has the right to present evidence to a jury in a second phase of any damages that proximately flow from those acts or omissions. Under these circumstances, bifurcation of NEGCo liability and, if necessary, a second jury trying the issue of individual damages will advance the goals of Fed.R.Civ.P. 42(b) and is permissible under the Seventh Amendment.

C. Questions (1)-(3) Are Sufficient To Try The Issue Of Liability.

Much of the discussion at the conference of counsel centered on whether liability can be efficiently determined in the first phase and, if so, whether any individual issues of liability would necessarily remain for decision in a subsequent phase. This discussion highlighted the stark difference in the Parties' respective views of the issue of liability. Plaintiffs submit that the issue of NEGCo's liability turns on whether its acts or omissions resulted in the disposal of coal gasification waste in the neighborhood in Tiverton.[2] If it did, then NEGCO is liable to Plaintiffs for any damages that proximately flow from that wrongful conduct. This would include damages resulting from restrictions on their property, the diminution of their property values, any resulting loss of use and enjoyment of their properties and emotional distress. However, NEGCo contends that it can only be liable to a particular property owner if its waste is on that owner's property. Thus, NEGCo contends that a jury must make 130 separate determinations of liability. NEGCo's view confuses the issue of liability with causation and damages. The extent to which that waste is present on a particular plaintiff's property is relevant to the degree, if any, of damages that the particular plaintiff has sustained as a result of NEGCo's wrongful acts or omissions. It is not an element of liability.

At the January 16, 2008 hearing, the Court asked the parties to address whether a property owner who cannot prove that there is coal gasification waste on its property had any basis for claims against NEGCo. Transcript at 29:5 to 30:6. Plaintiffs submit that such property owners do have claims against NEGCo and may recover damages if liability under questions (1)-(3) is established.

[2] The plaintiffs' remaining theories of liability following the Court's November 3, 2006 Memorandum and Order on NEGCo's motions to dismiss are: negligence, strict liability and public nuisance.

The United States Supreme Court has held that an owner of property has a "bundle of rights" relating to the ownership of property. *Kidd, Dater and Price Co. v. Musselman Grocer Co.*, 217 U.S. 461, 465 (1910); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 441 (1982); *Pascoag Reservoir & Dam, LLC v. Rhode Island*, 217 F.Supp.2d 206 (2002). The rights at issue are the rights to acquire property, own it, possess it, use it, buy it, or sell it. Id. When the owner has one of the significant incidents of ownership taken away from him, he is deprived of the property itself, within the meaning of the Constitution. Id. The moratorium has deprived all Plaintiffs from the unfettered use of their properties and interfered with their constitutionally protected property rights. Therefore, a conclusion that NEGCo is substantially responsible for the imposition of the moratorium area establishes liability to all Plaintiffs for all damages that flow from the interference with the Plaintiffs full use of their properties caused by the moratorium, whether or not they have coal gasification waste on their properties. Damages flowing from the interference with the use of Plaintiffs properties include loss of use and enjoyment, emotional distress and property damage.[3]

In its decision on the Motion to Dismiss, this Court has recognized,

> A public nuisance may consist of an "'aggregation of private injuries [that] becomes so great and extensive as to constitute a public annoyance and inconvenience, and wrong against the community.'" *Sullivan v. Amer. Mfs. Co. of Massachusetts*, 33 F.2d 690, 692 (4th Cir. 1929) (quoting *Wesson v. Washburn Iron Co.*, 13 Allen 95, 90 Am. Dec. 181 (Mass. 1866)). An action for public nuisance may be maintained by a private citizen who "suffers special damage, distinct from that common to public." *Hydro Manufacturing*, at 957 (quoting *Iafrate v. Ramsden*, 190 A.2d 473, 476 (1963)).

Moreover, under Rhode Island law,

---

[3] NEGCo has suggested that it cannot be liable for Tiverton's exercise of its police powers in order to mitigate damages for which it is responsible as the result of coal gasification waste in the Bay Street Neighborhood of Tiverton. In Rhode Island, as in the rest of the country, the public duty doctrine exempts only governmental entities from liability when they exercise police powers and other activities that would not normally be undertaken by a private individual. *O'Brien v State of Rhode Island*, 555 A.2d 334 (R.I. 1989).

> "Special damages" may include personal injury to the plaintiff, damage to the plaintiff's property or: substantial interference with the use and enjoyment of the plaintiff's property; but, in order to be compensable under a public nuisance theory, the damages must have been caused by interference with the public right. *See Hydro Manufacturing*, 640 A. 2d at 957-58; Prosser 90, at 648.

Thus, under the well established law of public nuisance and this Court's own prior ruling, Plaintiffs may recover for injuries suffered as a result of the presence of manufactured wastes if the jury concludes that the cumulative presence of this contamination constitutes a public nuisance. After this requite showing is made, Plaintiffs will then be able to recover loss of property value as the result of stigma.[4] The Rhode Island courts have not addressed the issue of whether stigma damages are available for property owners who are in an area of contamination, but cannot prove that there is contamination on their property. However, in *Cazabat v. Metropolitan*, 2000 WL 1910089 (R.I.Super), the court did recognize that stigma damages were recoverable in addition to the costs of repair when a car is damaged in an automobile accident. Stigma damages result from the reduction in value of property due to the general public's fear or marketplace perceived reduction in value due to a condition such as contamination. The Restatement (Second of Torts) provides for the recovery of damages for "an amount for depreciation although there has been no substantial physical harm". Stigma damages cannot be recovered when the impact to property value is remote, speculative or conjectural. *Ryan v. Kansas Poer & Light*, 815 P.2d 528 (1958). Numerous states have articulated this standard restricting stigma damages to properties that actually have been impacted by contamination, see e.g. *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 71 F.Supp. 179, 193 (W.D.N.Y. 1999). However, stigma damages have been held to be recoverable when the owner of the property can prove

[4] Plaintiffs whose properties have not been tested or have not been adequately tested additionally have a right to have their properties investigated as a way to abate the nuisance of the moratorium. R.I. Gen Laws. § 10-1-1 and R.I. Gen. Laws 23-19.1-22 (1956) and the Remediation Regulations DEM-DSR-01-93. If their properties are clean, their damages are limited to the effects of the moratorium, if contaminated, they are also entitled to the damages that flow from the contamination.

physical invasion or damage, or unreasonable interference with that person's use and enjoyment of the property, see e.g. *In re W.R. Grace & Co., et al., Debtors*, 346 B.R. 672, 677 (2006); *Scheg v. Agqay,* 229 A.D.2d 963, 645 N.Y.S.2d 687, 688 (N.Y.App.Div.1996) (finding that complaint stated a cause of action for nuisance where plaintiffs alleged that "the value of their property was diminished as a result of its proximity to a landfill"); see also *MHE Assocs. V. United Musical Instruments,* No. 1:93CV1883, 1995 WL 1051651, at *4 (N.D. Ohio Mar. 24, 1995) (plaintiffs could maintain a nuisance claim for the loss of property value due to public perception if the interference was unreasonable and substantial); *Allen v. Uni-First Corp*., 151 Vt. 229, 558 A.2d 961 (1988) (finding that the trial court erred when it prevented the jury from properly considering the plaintiffs' claims that their property values had decreased due to "widespread contamination and the resulting public perception that [their town] was an unsafe place to live"); *Acadian Heritage Realty, Inc. v. City of Lafayette,* 446 So.2d 375,379 (La.Ct.App.1984) ("damages resulting from the 'stigma' attached to [the mere existence of a] landfill may be recovered"). The court in *Portland Natural Gas v. Maritimes*, 195 F.Supp.2d 314 (D.Ma 2002) held that other courts, in the same or similar circumstances, have held that the anticipation of increased interference or potential hazards on the land remaining after a taking, "stigma damages," can be considered in assessing severance damages citing the following cases:

> *Vector Pieline, L.P., v. 68.55 Acres of Land,* 157 F.Supp.2d 949, 957 (N.D.Ill.2001) (holding that "stigma damages" were properly included in calculation of severance damages, where proximity of gas pipeline could trigger fears about possible mishaps); *United States v. 14.38 Acres of Land,* 80 F.3d 1074 1078 (5th Cir.1996) (holding that increased fear of flooding was a matter that factfinder could properly consider in assessing severance damages); *United States v. Robertson,* 354 F.2d 877, 881 (5th Cir.1966) (recognizing viability of claim for severance damages based on prospective buyers' likely fear of hazards arising from construction of power line carrying high voltage electricity); *United States v. 33.5 Acres of Land,* 789 F. 2d 1396, 1399-1400 (9th Cir.1986) (holding that local buyers' fear of possible knapweed infestation legitimately affected calculation of severance damages); *United States v. Easement and Right of Way,* 405 F2d 305, 309 (6th Cir.1968) ("[W]e are not convinced that certain segments of the

buying public may not remain apprehensive of these high voltage lines, and therefore might be unwilling to pay as much for the [adjacent] property as they otherwise would."). Se *also* Vitauts M Gulbis, Annotation, *Fear of Powerline, Gas or Oil Pipeline, or Related Structure as Element of Damages in Easement Condemnation Proceeding,* 23 A.L.R.4th 631 (1983) (citing numerous cases with similar holdings).

Here, the presence of coal gasification waste resulted in the imposition of the moratorium area delineating the "zone of contamination". The damages to Plaintiffs are not remote or speculative as they all own property or reside in or abut the zone of contamination which the Plaintiffs are prepared to prove caused a reduction in property value, interfered with financing, interfered with the ability to sell and otherwise unreasonably interfered with Plaintiffs use and enjoyment of the properties, separate and apart from the restrictions imposed by the moratorium itself. The substantial delay in the completion of the investigation of the contamination has resulted in a cloud on the title of these properties and on Plaintiffs reasonable use and enjoyment of their properties. Because every property owner (regardless of whether that owner has waste on its property) would have the right to seek some level of damages from NEGCo if a jury were to find that NEGCo is liable for gasification waste in the vicinity of plaintiffs' properties, there is no reason why the jury in the first phase of trial would need to determine on a property by property basis whether coal gasification waste is present. That determination would be relevant, however, to the issues of causation and damages. When a jury in the second phase considers what damage, if any, NEGCo caused to a particular property owner because of its wrongful waste disposal, whether waste is on that property would certainly be a relevant consideration. However, as explained above, the presence of waste on a particular property is not a precondition for recovery.

D. Question (4) Will Undermine The Benefits Of Bifurcation.

Not only is a property by property contamination determination not necessary to establish NEGCo liability, but requiring the first jury to engage in some 130 separate deliberations will undermine the Fed.R.Civ.P. 42(b) benefit of bifurcation. As the Court observed at the conference of counsel on January 3, 2008,

> Maybe I'm oversimplifying this, but it seems to me that, at some point, the Plaintiffs are going to have to show, A, that coal gasification waste was deposited on some of this property or somewhere in the vicinity of this property and it's the responsibility of New England Gas. That's the first thing they're going to have to show.
>
> And then, at some point, they're going to have to show, at least with respect to the individual Plaintiffs, each Plaintiff is going to have to show that, A, his or her property is contaminated in some way and, B, the contamination came from this coal gasification waste that they've proven New England Gas caused to be deposited there.
>
> So I don't – I'm having a little difficulty seeing why, you know, why the case can't – the first part of the case, that New England Gas deposited coal gasification here, can't be determined and then be the spring-off point for individual damages.

January 3, 2008 Transcript at 31-32.

Plaintiffs submit that the Court got this exactly right. It was not oversimplifying at all. The issue of NEGCo liability can be efficiently determined in the first phase of trial by submitting to that jury Questions (1)-(3) suggested by the Court on January 16, 2008. A determination "that coal gasification waste was deposited on some of this property or somewhere in the vicinity of this property and it's the responsibility of New England Gas" would resolve once and for all the issue of NEGCo's liability. Once that general liability is established, every plaintiff property owner in the vicinity would have the right to try to prove that NEGCo's adjudged acts or omissions caused them damage. That proof (or defense to that proof) will necessarily require the property by property evidence for individual damages.[5]

[5] However, the trial of Question 4 in the first trial could also create Seventh Amendment problems as the issue of what contamination is on each property and whether NEGCo or the Third-party Defendants are liable for

III. Conclusion.

For the reasons set forth above, the court should order bifurcation of the trial of this case and first try the issue of NEGCo liability. In the first phase of trial, the jury should be asked to answer Questions (1)-(3) posed by the court on January 16, 2008. Question (4) should be deferred to the damages phase. Finally, if liability is established, all plaintiffs within the Bay Street Neighborhood Moratorium Area should be given the opportunity to prove their damages.

Respectfully submitted,

PLAINTIFFS,
By and through their attorneys,

*<u>/s/ Robert J. McConnell</u>*
Robert J. McConnell (#3888)
Jonathan D. Orent (#7408)
**MOTLEY RICE, LLC**
321 South Main Street
Providence, RI 02940
(401) 457-7700

*<u>/s/ Neil T. Leifer</u>*
David C. Strouss
Neil T. Leifer
Brad J. Mitchell
**THORNTON & NAUMES, LLP**
100 Summer Street, 30th Floor
Boston, MA 02110
(617) 720-1333

*<u>/s/ Mark W. Roberts</u>*
Mark W. Roberts
**MCROBERTS, ROBERTS AND RAINER, LLP**
53 State Street
Boston, MA 02109

the hazardous materials would have to be tried in two successive trials by two successive juries. NEGCo's liability can be established as to all Plaintiffs if a jury returns a verdict in the Plaintiffs' favor on Questions (1) - (3). Question 4 will involve expert testimony concern whether there is coal gasification waste on each of the Plaintiffs properties. If the jury in phase one determines that waste on some property is attributable to a source other than NEGCo, in the second phase of the trial the Third-party Defendants will want to have an opportunity to re-try the exact issue and to prove either that the hazardous materials were related to coal gasification waste or at least that they are not the result of any act or omission of the Third-party Defendants.

(617)-722-8222
(617)-720-2320 Fax

**CERTIFICATION**

Service upon the following parties was completed electronically via the ECF system on January 29, 2008 pursuant to Fed.R.Civ.P. 5(b)(2)(D) and §10(b) of Admin. Order 2006-01.

*/s/ Mark W. Roberts*
Mark W. Roberts

**Plaintiffs' Counsel**

Paul Revere, III
Law Offices of Paul Revere, III
226 River View Lane
Centerville, MA 02632
Email: RevereIII@aol.com

Brian R. Cunha, Esq.
Law Offices of Brian Cunha & Associates
311 Pine Street
Fall River, MA 02720
Email: brian@briancunha.com

Richard J. Zabbo, Esq.
Ratcliffe Burke Harten & Elias LLP
160 Financial Plaza
Providence, RI 02903
Email: rzabbo@rbhelaw.com

**Southern Union**

David A. Wollin, Esq.
Adler Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
401-274-7200
dwollin@apslaw.com

John Tarantino, Esq.
Adler Pollock & Sheehan, P.C.
175 Federal Street, 10th Floor
Boston, MA 02110
617-482-0600
617-482-0604
jtarantino@apslaw.com

Kristen W. Sherman, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
274-7200
Fax: 351-4607
Email: ksherman@apslaw.com

David E. Ross, Esq.
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway
New York, NY 10019
212-506-1700
212-506-1800
dross@kasowitz.com

Seth Davis, Esq.
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway

Eric D. Herschmann, Esq.
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway

New York, NY 10019
212-506-1790
Fax: 212-506-1800

New York, NY 10019
212-506-1700
Fax: 212-506-1800
Email: eherschmann@kasowitz.com

Noelle Kowalczyk, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019
212-506-1700
Fax: 212-506-1800

Gerald J. Petros, Esq.
Hinckley, Allen & Snyder
50 Kennedy Plaza
Suite 1500
Providence, RI 02903
274-2000
Fax: 277-9600
Email: gpetros@haslaw.com

Robin-Lee Main, Esq.
Hinckley Allen & Snyder
50 Kennedy Plaza, Suite 1500
Providence, RI 02903-0819
401-274-2000
Email: rmain@haslaw.com

Christina C. Dodds, Esq.
Bishop London Brophy Dodds, PC
3701 Bee Cave Road
Austin, TX 78746
512-479-5900
Fax: 512-479-5934
Email: CDodds@bishoplondon.com

**INTERESTED PARTIES**

**RIDEM**

Lewis S. Wiener, Esq.
Sutherland, Asbill & Brennan LLP
1375 Pennsylvania Ave, NW
Washington, DC 20004-2415
Tel: 202-383-0140
Fax: 202-637-3593
Cell: 202-299-7992
Email: lewis.wiener@sablaw.com
LEAD ATTORNEY

Patty Allison Fairweather, Esq.
Executive Counsel
State of Rhode Island
Department of Environmental Management
Office of Legal Services
235 Promenade Street
Providence, RI 02908-5767
Tel: 401-222-6607
Fax: 401-222-3378
patty.fairweather@dem.ri.gov

Susan B. Forcier, Esq.
RI Department of Environmental Management
Office of Legal Services
235 Promenade Street
Fourth Floor
Providence, RI 02908
222-6607
Fax: 222-3378
Email: susan.wilson@dem.ri.gov

Gregory S. Schultz, Esq.
Legal Counsel
State of Rhode Island
Department of Environmental Management
Office of Legal Services
235 Promenade Street
Providence, RI 02908-5767
Tel: 401-222-6607
Fax: 401-222-3378
gregory.schultz@dem.ri.gov

**RI Governor Donald L. Carcieri**

Michael D. Mitchell, Esq.
Department of Administration
One Capitol Hill
Providence, RI 02908
401-222-8339
Fax: 401-222-8244
Email: mmitchell@admin.ri.gov

Matthew B. Smith, Esq.
Matthew B. Smith, Esq., Attorney At Law
1206 Westminster St.
Providence, RI 02909
272-7277
Fax: 454-5557
Email: matthew@verdecchialaw.com

**Jose Souza, Sr.**

Michael K. Marran, Esq.
PO Box 6067
321 South Main Street, Suite 200
Providence, RI 02940-6067
401-454-4000
Fax: 401-457-7708

**THIRD PARTY DEFENDANTS**

**Gulf Oil Corporation**

Bruce Gregory Tucker, Esq.
55 Hammarlund Way
Middletown, RI 02842
401-843-8400
Fax: 401-843-8401
Email: btucker@legalmgt.com

David B. Willis, Esq.
Legal Management Services, LLC
55 Hammarlund Way
Middletown, RI 02842
401-843-8400
Fax: 401-843-8401

David A. Crichlow, Esq.
Pillsbury Winthrop Shaw Pittman, LLP
1540 Broadway
New York, New York 10036
Tel: 2212-858-1640
Fax: 212-858-1500

David M. Goldberg, Esq.
Pillsbury Winthrop Shaw Pittman, LLP
1540 Broadway
New York, New York 10036
Tel: 215-858-1450
Fax: 917-456-3472

Catherine C. McCulley, Esq.
Pillsbury Winthrop Shaw Pittman, LLP
909 Fannin Street
Houston, TX 77010
713-276-7633
Fax: 281-582-7545

**Bridgestone Firestone North American Tire, LLC; Bridgestone Americas Holdings, Inc.:**

Benjamin V. White, III Esq.
Vetter & White Inc.
20 Washington Place
Providence, RI 02903
Tel: 401-421-3060
Fax: 401-272-6803
bwhite@vetterandwhite.com

Kimberly A. Simpson, Esq.
Vetter & White Inc.
20 Washington Place
Providence, RI 02903
Tel: 401-421-3060
Fax: 401-272-6803
ksimpson@vetterandwhite.com

William David Wick
Wactor & Wick LLP
180 Grand Avenue
Suite 950
Oakland, CA 94612

**Inland Fuel Terminals, Inc:**

Paul M. Sanford, Esq.
Burns & Levinson LLP
One Citizens Plaza, Suite 1100
Providence, RI 02903
401-831-8330
Fax: 401-831-8359
Email: psanford@burnslev.com

Christopher P. McCormack, Esq.
PULLMAN & COMLEY, LLC
850 Main Street P.O. Box 7006
Bridgeport, CT 06601-7006
Phone: 203-330-2016
Fax: 203-576-8888
Email: cmccormack@pullcom.com

**Honeywell International, Inc**

Gregory L. Benik, Esq.
Benik & Associates P.C.
931 Jefferson Boulevard, Suite 2008
Warwick, RI 02886
401-454-0054
401-732-5054 facsimile
gbenik@jreri.com

Jeffrey Bromme, Esq.
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206
202-942-6254
Fax: 202-942-5999
Email: jefrey_bromme@aporter.com

**Dominion Resources, Inc**
**Dominion Energy Brayton Point LLC :**

Andrew G. Mauck, Esq.
Troutman Sanders LLP
P.O. Box 1122
1001 Halifax Point
Richmond, VA 23208

Christian Bennett White Stephens, Esq.
Taylor Duane Barton & Gilman LLP
10 Dorrance Street, Suite 700
Providence, RI 02903
401-273-7171
Email: cstephens@taylorduane.com

Matthew B. Kirsner, Esq.
Troutman Sanders, LLP

Craig R. Waksler, Esq.
McGivney & Kluger, P.C.

P.O. Box 1122
1001 Haxall Point
Richmond, VA 23208
804-697-1449
Fax: 804-698-6001

72 Pine Street, 1st Floor
Providence, RI 02903
Tel: 401-272-5300
Fax: 401-331-7454
cwaksler@mcgivneyandkluger.com

**CITY OF FALL RIVER:**

Kerry T. Ryan, Esq.
Tarlow Breed Hart & Rodgers, P.C.
101 Huntington Avenue
Prudential Center
Boston, MA 02199
Main # 617-218-2000\
Direct Line: 617-218-2027
Kryan@tbhr-law.com

Anthony F. Muri, Esq.
Muri Associates LLC
10 Weybosset Street
Providence, RI 02903
401-421-7300
Fax: 401-421-7352
Email: amuri@murilaw.com

Emily C. Shanahan, Esq.
Tarlow, Breed, Hart & Rodgers, PC
101 Huntington Avenue
Prudential Center
Suite 500
Boston, MA 02199
617-218-2000
Fax: 617-261-7673

**TOWN OF TIVERTON:**

Jeanne M. Scott, Esq.
URSILLO, TEITZ & RITCH, Ltd.
2 Williams Street
Providence, RI 02903
401-331-2222 Ext. 205
Email: Jeannescott@utrlaw.com