# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * * * C.A. NO. 05-221T

GAIL CORVELLO, et al

VS. MARCH 20, 2008
10:00 A.M.

N.E. GAS CO., INC., et al

* * * * * * * * * * * * * * * * PROVIDENCE, RI

BEFORE THE HONORABLE ERNEST C. TORRES,
SENIOR JUDGE

(Chambers Conference)

Court Reporter: Karen M. Wischnowsky, RPR-RMR-CRR
One Exchange Terrace
Providence, RI 02903

individual property was contaminated, not that I suffered some other kind of harm because of a moratorium, but my property's contaminated, that if they have no contamination or no proof of contamination, whatever the theory is of liability for contamination, that Plaintiff can't win.

THE COURT: Well, that's almost self-evident. I don't know if the Plaintiffs are disputing that. Are the Plaintiffs saying that if a Plaintiff is making a claim -- to the extent a Plaintiff is making a claim for individual contamination, that if they can't show their property is actually contaminated, they can't prevail on at least that part of the claim? Is there any dispute on that?

MR. LEIFER: I wouldn't think so, your Honor. Let me explain. The Plaintiffs are claiming that there has been damage to their property, either in the property value or interference with their use and enjoyment of the property, and damages that flow from that.

Some of that damage for Plaintiffs who have evidence of MGP waste on their properties, some of the measure of those damages flows from the existence of the contaminated waste on their properties.

For those who don't have it, obviously the

answer's no to that; but we believe that the law recognizes that if the activities of New England Gas Company resulted in a situation in Tiverton which required the government to impose a moratorium, that -- and as a result of that moratorium there has been a diminution in that Plaintiff's property value or interference with his or her use and enjoyment of the property, then New England Gas, Southern Union, would be liable for those damages, not because there's contamination on that person's particular property but because they are within the parameters of the moratorium and that fact results in damage.

And so I guess the issue of law then becomes whether or not the existence of the moratorium -- let me take that back. The issue becomes whether or not if the activities of New England Gas Company resulted in this moratorium, whether these Plaintiffs were foreseeable victims who could be damaged and, therefore, should have the right to seek those damages.

And I analogize it, your Honor, to an evacuation. If the government has to evacuate an area because of a chemical explosion or something or some other kind of environmental disaster or some other kind of event that an individual might have caused to happen by negligence or some other act or omission, the fact

of the evacuation is foreseeable, reasonably foreseeable, and the fact that certain kinds of damages are recoverable because they will be created from that evacuation are also foreseeable and are recognized.

And I apologize for going beyond your narrow question, but I just want to put it in a larger context.

THE COURT: Let me back up a moment and see if maybe I can clarify what John's trying to say here. I anticipated from the outset, and I said it many times, I think, that I understood the disagreement on this question of moratorium damages to be whether since the moratorium was imposed by the town and not by New England Gas, whether the Plaintiffs could claim moratorium -- Plaintiffs whose properties were not actually contaminated or Plaintiffs whose properties were contaminated could claim additional damages or damages attributable to the imposition of the moratorium.

And I understood New England Gas' position to be no, the moratorium was imposed by the governmental entity and, therefore, there's a, whatever you want to call it in negligence parlance, an intervening cause or whatever -- however you want to describe it.

And the Plaintiffs' position I understood to be

it doesn't make any difference. If the moratorium was imposed as a result of New England Gas' negligence, New England Gas' liability for improperly handling dangerous substances or New England Gas' liability for creating a nuisance, if the moratorium was imposed as a result of what New England Gas did, New England Gas could be liable. And so that's what I -- is that pretty much --

MR. TARANTINO: I think you've said it.

THE COURT: So now the question is, I see one purely legal aspect to the question, and that is can a Defendant ever be liable for so-called moratorium damages, period. That's purely a question of law.

Maybe a related question or maybe a more refined question is, does the answer to that question depend on the reasonableness of the imposition of the moratorium. Two starkly different situations.

The moratorium was imposed arbitrarily, capriciously and without any basis whatsoever. Now, do you hold the Defendant liable for that? At the other end of the spectrum, there was ample justification and reason for imposing the moratorium, there was a mountain of hazardous materials that were dangerous and so forth. Those to me are two -- much different situations, and that scenario involves questions of

THE COURT: All right.

MR. McCONNELL: Bob McConnell. Judge, we think this issue is on every one of the elements. We think there's an interference with the public right and that there's -- we're alleging contamination of the roads and the neighborhoods, the roads and the surrounding yards in this neighborhood in North Tiverton.

We think there's been harm to the general public, there's been widespread contamination, there's been basically -- the moratorium is not the public nuisance. The moratorium is the reaction to the public nuisance.

And we believe, you know, the moratorium has froze basically all improvements in this area, and that's a harm to the general public in that area.

And as you said, we're going to dispute the issue of the controlling instrumentality. They certainly generated the waste. They hired Simpson. They hired Simpson as a general contractor for a lot of things, one of them being dumping this waste. He moved a lot of different stuff for them. He wasn't a, quote, unquote, hazardous waste hauling contractor. I guess those weren't around back then, talking about 20/20 hindsight; but the fact is, he was hired as a general contractor at that point.